COMMONWEALTH *vs.* SHELTON BUTLER.

Suffolk. May 6, 1963. — May 29, 1963.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Sex Offender. Constitutional Law,* Sex offender, Due process of law, Double jeopardy.

Commitment of one serving a sentence in a penal institution for a sexual offence to a treatment center as a sexually dangerous person for an indeterminate period of one day to life pursuant to the procedures established under G. L. c. 123A, § 6, did not unconstitutionally deprive him of due process of law nor place him in double jeopardy. [148–149]

Certain evidence at the hearing on a petition for commitment of one to a treatment center as a sexually dangerous person pursuant to G. L. c. 123A, § 6, warranted a finding that the examination and diagnosis of the defendant at the center during a temporary commitment under §§ 6, 4, had been "under the supervision of" two psychiatrists although they were not on the permanent staff of the center. [149–150]

In a proceeding under G. L. c. 123A, § 6, for commitment of one to a treatment center as a sexually dangerous person, the fact that the report of two psychiatrists who had supervised an examination and diagnosis of the defendant during a temporary commitment pursuant to §§ 6, 4,

omitted any recommendation did not render their report defective where both recommended commitment in their testimony at the hearing of the case.   [150]

PETITION for commitment of the defendant to a treatment center as a sexually dangerous person, filed in the Superior Court on January 9, 1962.

It appeared that while the defendant was serving a sentence as a prisoner in a penal institution for a sexual offence the superintendent thereof filed in the Superior Court a report of the prison psychiatrist and a motion for a temporary commitment of the defendant to a treatment center; and that following such commitment and the filing of the report of two psychiatrists the instant petition was filed by the District Attorney.

Motions by the defendant to dismiss the petition on constitutional grounds and the ground of invalidity of the two psychiatrists' report were denied by Goldberg, J., who heard the case on the merits.   The judge denied sundry requests by the defendant for rulings to the effect that the proceeding deprived him of due process of law and placed him in double jeopardy, that failure of the two psychiatrists "to have both supervised" the examination and diagnosis during the temporary commitment and to report their recommendations was "fatal to the validity of" the proceeding, and that on the evidence there could not be a finding that the defendant was a sexually dangerous person or a commitment "for an indeterminate life term."   The judge found the defendant to be a sexually dangerous person and ordered him committed to the treatment center for an indeterminate period of one day to life.   The defendant alleged exceptions.

Louis M. Nordlinger for the defendant.

Joseph A. Melley, Assistant District Attorney, for the Commonwealth.

WHITTEMORE, J.   The judge in the Superior Court, acting under G. L. c. 123A, found that the defendant is a sexually dangerous person and ordered him committed to the treatment center for such persons (the center) for the in-

determinate statutory period of one day to life.  *Ibid.* § 6.
Except for the points discussed below, this case is like *Commonwealth* v. *Dagle,* 345 Mass. 539, which disposes of the
defendant's exceptions in respect of constitutional issues.

It was not error to decline to rule that the "failure of the
examining doctors to have both supervised the period of
examination and diagnosis is fatal to the validity of this
proceeding . . .." The statute requires only that the
"examination and diagnosis" be "under the supervision
of not less than two psychiatrists." This does not require
that the psychiatrists be on the permanent staff. The evidence shows that the statutory purpose was fully met by
the procedures adopted. Each of the two psychiatrists
went to the center several times a week and laid out "a program for the subject which they then recommend[ed] to
. . . [the director of psychiatry at the center] or suggest[ed] at staff conferences." "They were free to supervise in terms of requesting that psychological tests be
done." One of the psychiatrists testified that he had considered the defendant's record and the opinions of the staff
and had interviewed the defendant once. The other psychiatrist testified that he had interviewed the defendant on
three occasions, had examined his record, and had considered the opinions of the staff. The director of psychiatry
testified that persons committed for diagnosis are "seen by
the senior [staff] psychiatrist, . . . by one social worker,
. . . by a psychologist, . . . by . . . [the director's] administrative assistant, . . . almost always . . . by . . . [the
director] . . . [as well as] by the two committing psychiatrists, and . . . by the chief of the security force, so that
at a staff conference we may have a convergence of all
opinions."

It is inconsequential that, as the director of psychiatry
testified, the "degree of supervision actually required in
order to fill the need of the examination and diagnosis is
extremely modest," and that one of the psychiatrists testified that "he did not supervise the examination and diagnosis period of sixty days . . .." If this means that in the
particular case the latter did not lay out a program, it does

not follow that the examination and diagnosis were not under his supervision to the full extent necessary to enable him to make the report which the statute contemplates.

There is nothing in the contention that the written report of the psychiatrists is defective because it omits the recommendation called for by § 6, which both made orally in the course of their testimony, that is, that the defendant be committed to the center.

*Exceptions overruled.*