COMMONWEALTH *vs.* JAMES N. McHOUL.

Suffolk.    November 1, 1976. — February 17, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Sex Offender.   Practice, Civil,* Sex offender.   *Evidence,* Of sexual misbehavior; Sex offender; Opinion: expert.   *Words,* "Sexually dangerous person."

Evidence of a defendant's prior acts of sexual misconduct and testimony of psychiatric experts warranted a finding that the defendant was a sexually dangerous person under G. L. c. 123A, §§ 1,6, even though the psychiatrists would not state in terms of reasonable doubt that the defendant would be violent in the future. [13-14]

PETITION for commitment filed in the Superior Court on September 26, 1974.

The case was heard by *Bennett,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Adam M. Lutynski* for the defendant.

*J. Kevin Leary,* Assistant District Attorney, for the Commonwealth.

QUIRICO, J.   This is an appeal from a decision of the Superior Court committing the defendant to the treatment

center at the Massachusetts Correctional Institution at Bridgewater (Bridgewater) for an indeterminate period of from one day to life as a sexually dangerous person (SDP) under G. L. c. 123A, §§ 1, 6. We affirm that decision.

The defendant pleaded guilty to a 1962 charge of breaking and entering in the daytime with intent to commit rape. In 1967, he pleaded guilty to a charge of assault with intent to rape and was given a twenty-five to thirty-year sentence. He was in custody pursuant to this second conviction during the present commitment proceeding.

In 1974, pursuant to a motion filed by the superintendent of Bridgewater, a judge of the Superior Court committed the defendant to the treatment center at Bridgewater for a sixty-day period of examination and diagnosis. G. L. c. 123A, § 6. Thereafter, a joint report was filed in court by Dr. Robert F. Moore and Dr. Earl M. Wedrow, consulting psychiatrists to the treatment center. G. L. c. 123A, § 4. At the request of the defendant, the court appointed Dr. Michael W. Marcus, an independent psychiatrist not connected with the Department of Mental Health; he examined the defendant and filed a separate report. Both reports concluded that the defendant was a sexually dangerous person.

On the basis of these reports, the records of the defendant's prior convictions, and the testimony of Dr. Moore and Dr. Marcus at a two-day hearing in September, 1974,[1] a judge of the Superior Court found the defendant to be an SDP and committed him to the treatment center at Bridgewater for an indeterminate period of from one day to life. The defendant filed a timely appeal.

The defendant claims that the Commonwealth failed to prove beyond a reasonable doubt that he was an SDP under G. L. c. 123A, § 1. Subsumed in this argument is the

---

[1] Dr. Wedrow also testified at the hearing, but the judge ordered his testimony struck because the doctor considered police reports and a prior examination of the defendant which had not been preceded by a proper warning.

claim that *Andrews, petitioner,* 368 Mass. 468 (1975), which required that an adjudication that a person is sexually dangerous be made by standards of proof beyond a reasonable doubt, should be retroactively applied to this 1974 proceeding.

We are not required to reach the question of the retroactivity of *Andrews, petitioner, supra,* because at the close of the evidence the trial judge ruled that "[t]his Court is satisfied beyond its own reasonable doubt that the prisoner, McHoul, is a sexually dangerous person ...." Hence, the possible application of *Andrews, petitioner,* is not presented on this record.

We note, however, that a person committed as an SDP may petition for an annual hearing for examination and discharge. G. L. c. 123A, § 9. In *Andrews, petitioner, supra* at 485, we stated that "at any annual hearing on a petition by an SDP for his release from the treatment center the Commonwealth shall have the burden of proving that as of the time of the hearing the person committed continues to be sexually dangerous." The retroactivity question is therefore largely immaterial because procedural safeguards are extended to all persons adjudicated SDPs who seek annual review.

The more substantial question is whether the trial judge's determination that the defendant is an SDP was warranted on the evidence. General Laws c. 123A, § 1, as appearing in St. 1958, c. 646, § 1, defines "sexually dangerous person" as follows: "Any person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive behavior and either violence, or aggression by an adult against a victim under the age of sixteen years, and who as a result is likely to attack or otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires." In *Peterson, petitioner,* 354 Mass. 110, 117 (1968), we said that "[t]he statutory definition requires repetitive or compulsive behavior, violence or aggression by an adult against a person under the age of sixteen and a likelihood that in-

jury will be [in]flicted." See *Commonwealth* v. *Jarvis*, 2 Mass. App. Ct. 8, 9-10 (1974).

The defendant does not dispute that there was sufficient evidence of repetitive behavior and of violence. The defendant's sole contention is that the evidence was insufficient to support a finding that he "is likely to attack or otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires." G. L. c. 123A, § 1.

The basis for this claim is that both psychiatrists noted the difficulty in making accurate psychiatric predictions about future violent acts. While both psychiatrists, one the defendant's own witness, agreed that the defendant was sexually dangerous, neither would make a definitive, categorical statement predicting the defendant's future acts. Dr. Moore, however, stated that he felt there was a strong propensity for repetition of the defendant's past acts; Dr. Marcus stated that "there is a likelihood that there will be future violent behavior" and that there was "reason to expect that [the defendant] would repeat some sort of violent sexual crime."

The defendant nonetheless claims that this testimony, particularly a statement by Dr. Moore about the preponderance of likelihood of future violent acts, "expressly falls short of the reasonable doubt standard." This argument misconceives the burden the Commonwealth must meet to prove that a person is an SDP as well as the function of psychiatric testimony in meeting that burden.

The Commonwealth must produce evidence on each of the elements stated in G. L. c. 123A, § 1, so as to persuade the judge that the defendant is sexually dangerous. It is not necessary that the psychiatrist himself testify in formulaic terms that he is satisfied beyond a reasonable doubt about each of the elements. Rather he must give his expert opinion which the judge may consider in reaching his determination.[2]

In *Commonwealth* v. *Dagle*, 345 Mass. 539, 543, cert.

---

[2] At a time when the ability of psychiatrists to make reliable predictions has become a matter of legal and psychiatric controversy, it would

Commonwealth *v.* McHoul.

denied, 375 U.S. 863 (1963), the defendant challenged the sufficiency of the evidence where a psychiatrist testified about the "distinct possibility" of future attacks within G. L. c. 123A, § 1. In that case, we stated that "[i]t was not necessary that this witness testify in the precise words of the statute. Careful physicians, by training and experience, are guarded in prognosis. The decision as to what was 'likely' was for the judge."

In *Commonwealth* v. *Peterson,* 348 Mass. 702, cert. denied, 384 U.S. 909 (1965), the psychiatrist on cross-examination defined "sexually dangerous person" in terms not precisely in accord with the statutory definition. We declined to hold that the discrepancy undermined the trial judge's determination. As we there stated, "That the doctor's definition did not conform in all respects with that in the statute did not put his opinion out of the case, although it might have affected its weight. . . . The ultimate decision as to whether the defendant was a sexually dangerous person was for the judge to determine on all the evidence." *Id.* at 705.

Similarly, in this case, the defendant's prior acts of sexual misconduct and the testimony of the psychiatric experts provided sufficient basis to permit the judge as trier of the facts to draw the inference of likelihood of future attacks or infliction of injury. The determination of sexual dangerousness is a legal and not a psychiatric question. In an analogous context, the Supreme Court has spoken of "the critical function of introducing into the process a lay judgment, reflecting values generally held in the community,

be anomalous to require a trial judge to defer to conclusory expert testimony containing the "reasonable doubt" language. See *Commonwealth* v. *Smith,* 357 Mass. 168, 176-181 (1970); A.A. Stone, Mental Health and Law: A System in Transition, 25-40, 179-198 (1975); Developments in the Law — Civil Commitment of the Mentally Ill, 87 Harv. L. Rev. 1190, 1236-1244 (1974); Diamond, The Psychiatric Prediction of Dangerousness, 123 U. Pa. L. Rev. 439 (1974); Ennis & Litwack, Psychiatry and the Presumption of Expertise: Flipping Coins in the Courtroom, 62 Calif. L. Rev. 693 (1974); Kozol & others, The Diagnosis and Treatment of Dangerousness, 18 Crime & Delinquency 371 (1972).

concerning the kinds of potential harm that justify the State in confining a person for compulsory treatment." *Humphrey* v. *Cady,* 405 U.S. 504, 509 (1972). It is for this reason that the statutory requirement of prediction must rest with the judge, based on all the evidence, and not be delegated to experts. *Commonwealth* v. *Masskow,* 362 Mass. 662, 670-671 (1972). *Commonwealth* v. *Smith,* 357 Mass. 168, 176-178 (1970). *Attorney Gen.* v. *A Book Named "Naked Lunch,"* 351 Mass. 298, 302-305 (Reardon, J., dissenting), 311 (Kirk, J., dissenting) (1966). Psychiatric testimony may be probative of this matter, but it is not conclusive.[3] We are of opinion that the finding of the trial judge was amply warranted.

*Judgment affirmed.*

---

[3] Compare the formulation of Bazelon, C.J., in *Cross* v. *Harris,* 418 F.2d 1095, 1100-1101 (D.C. Cir. 1969), regarding an analogous issue under the sexual psychopath act of the District of Columbia: "It is particularly important that courts not allow ... [the question of likelihood of harm] to devolve, by default, upon the expert witnesses. Psychiatrists should not be asked to testify, without more, simply whether future behavior or threatened harm is 'likely' to occur. For the psychiatrist 'may — in his own mind — be defining "likely" to mean anything from virtual certainty to slightly above chance. And his definition will not be a reflection of any expertise, but ... of his own personal preference for safety or liberty.' Of course, psychiatrists may be unable or unwilling to provide a precise numerical estimate of probabilities, and we are not attempting so to limit their testimony. But questioning can and should bring out the expert witness's meaning when he testifies that expected harm is or is not 'likely.' Only when this has been done can the court properly separate the factual question — what degree of likelihood exists in a particular case — from the legal one — whether the degree of likelihood that has been found to exist provides a justification for commitment" (footnotes omitted).