Commonwealth *vs.* Charles E. Lamb.

Suffolk.    November 1, 1976. — February 17, 1977.

Present: Hennessey, C.J., Quirico, Braucher, & Wilkins, JJ.

*Sex Offender.  Evidence,* Of sexual misbehavior; Sex offender; Opinion: expert; Communication between patient and psychiatrist.

In a proceeding under G. L. c. 123A, § 6, there was no error in admitting psychiatric opinion based in part on a stenographic record of a staff conference at the Massachusetts Correctional Institution at Bridgewater concerning the defendant where there was no evidence that privileged communications were involved in the conference [20-21]; the use of such a record was not precluded by the provisions of G. L. c. 123A, § 4 [21-22].

In a proceeding under G. L. c. 123A, § 6, a psychiatric report that contained an unequivocal statement that the defendant was a sexually dangerous person and a qualified statement that he appeared to be such was sufficient to satisfy the statutory requirement that the report "clearly indicate" the defendant is sexually dangerous.  [23-24]

A finding that a defendant was a sexually dangerous person within the meaning of G. L. c. 123A, § 6, was warranted by evidence of the defendant's prior offenses and by psychiatric testimony.  [24-25]

Petition for commitment filed in the Superior Court on December 15, 1970.

On remand by the Supreme Judicial Court, the case was heard by *McLaughlin,* C.J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Thomas G. Hoffman* for the defendant.

*Joseph E. Coffey,* Assistant District Attorney, for the Commonwealth.

Quirico, J.   This is an appeal from a decision of the Superior Court holding that the defendant is a sexually dangerous person (SDP) within the meaning of G. L.

c. 123A, § 1,[1] and committing him to the treatment center
at the Massachusetts Correctional Institution at Bridge-
water for an indeterminate period of one day to life under
G. L. c. 123A, § 6.

A brief review of the prior proceedings will place the
appeal in proper context. In 1963, the defendant was con-
victed of abuse of a female child. In 1968, the defendant
was convicted on pleas of guilty of assault and battery by
means of a dangerous weapon and mayhem arising from an
assault on a four-year-old girl whose abdomen was re-
peatedly burned with a cigarette and whose genitals were
battered.

In 1972, the defendant was adjudicated an SDP and
committed to the treatment center. In *Commonwealth* v.
*Lamb,* 365 Mass. 265 (1974), we agreed in part with a deci-
sion of the Appeals Court, 1 Mass. App. Ct. 530 (1973),
sustaining exceptions to the defendant's commitment. We
held that commitment was invalid because it had been par-
tially based on the admission of privileged communications
between the defendant and a psychotherapist (see G. L.
c. 233, § 20B), who had not warned the defendant that his
disclosures could be used at commitment hearings.

The defendant was therefore committed to Bridgewa-
ter for the statutory sixty-day period of examination and
diagnosis. G. L. c. 123A, § 6. In a report submitted to the
Superior Court, dated July 19, 1974, by Dr. Robert F.
Moore and Dr. Earl M. Wedrow, Dr. Moore stated that the
defendant appeared to be an SDP on the basis of his record
and Dr. Wedrow stated without qualification that the
defendant was an SDP. The Commonwealth then sought
commitment of the defendant to the treatment center as
an SDP for one day to life.

---

[1] General Laws c. 123A, § 1, as appearing in St. 1958, c. 646, § 1, de-
fines "sexually dangerous person" as "[a]ny person whose misconduct
in sexual matters indicates a general lack of power to control his sex-
ual impulses, as evidenced by repetitive or compulsive behavior and
either violence, or aggression by an adult against a victim under the
age of sixteen years, and who as a result is likely to attack or other-
wise inflict injury on the objects of his uncontrolled or uncontrollable
desires."

The defendant meanwhile sought a writ of habeas corpus from a single justice of this court, which was ultimately denied in *Lamb, petitioner*, 368 Mass. 491 (1975). We noted that the commitment proceeding initiated in the Superior Court was still pending, and that the defendant was entitled to a prompt hearing to determine whether he was an SDP.

The Commonwealth then continued with the commitment proceeding initiated by the 1974 psychiatric report. In January, 1976, a judge of the Superior Court heard two days of testimony from Commonwealth witnesses. The defendant presented no evidence.

Dr. Moore, a consultant to the Department of Mental Health, had attempted to examine the defendant on several occasions, but the defendant had declined interviews on the advice of his attorney. Dr. Moore's opinion was therefore based on his review of the records kept at the treatment center. He was reluctant to reach a definitive conclusion whether the defendant was an SDP without an interview, but nonetheless stated that the defendant appeared to be an SDP. Dr. Moore said that the defendant's 1968 offenses were sadistic and compulsive acts of a sexual nature. The likelihood that the defendant was an SDP was estimated to be "in the neighborhood of three or four" on a scale of zero to ten.

The defendant also declined to be interviewed by Dr. Wedrow, the Commonwealth's second expert witness. Dr. Wedrow nonetheless made a diagnosis on the basis of the defendant's file at Bridgewater, and based his conclusion on items in the record apart from the interview with Dr. Cohen which this court found inadmissible in *Commonwealth* v. *Lamb*, 365 Mass. 265 (1974). Dr. Wedrow stated that the defendant was an SDP who did not have control of his impulses, and would very likely commit further sexual misconduct if not committed. Dr. Wedrow concluded that the defendant's offenses revealed an inability to distinguish between the reality of human beings and inanimate objects.

At the close of the evidence, the trial judge ordered an

examination of the defendant by two psychiatrists under
circumstances where his psychiatric privilege would be
waived. Two weeks later, the court received a letter from
a psychiatrist reporting that the defendant declined to
submit to psychiatric interviews under these circum-
stances. The judge then heard final arguments, and later
ordered the defendant committed to the treatment center
from one day to life as an SDP.

1. *Admission of psychiatric opinion.* The defendant
argues that the trial judge erred in admitting psychiatric
opinion based on an impermissible foundation. There was
no error.

While it is difficult to determine what documents or
records are at issue, both doctors testified that, in the
absence of interviews with the defendant, they based their
opinions on study of the defendant's records maintained
at the treatment center. The argument has focused on the
doctors' reliance on a stenographic record of a staff con-
ference in 1970. Dr. Moore stated that the meeting was a
discussion of the defendant by all members of the staff of
the treatment center including the two committing physi-
cians, the doctor who supervised the center, and psychol-
ogists and social workers. Dr. Wedrow described the report
as "a stenographer's report of a conference which is not a
psychiatric conference. It was simply a conference at the
Treatment Center where social workers, the guards and
other personnel ... discussed their impressions of the
patients."

In *Commonwealth* v. *Lamb,* 365 Mass. 265, 270 (1974),
we held that the statutory privilege of G. L. c. 233, § 20B,
established a patient's right to "keep privileged any com-
munications made to a court-appointed psychotherapist in
the case of a court-ordered examination, absent a showing
that he was informed that the communication would not
be privileged and thus, inferentially, that it would be used
at the commitment hearing."

The defendant argues that because the Commonwealth
did not show that the 1970 conference summary was not
based on privileged communications, the psychiatrists

could not render an opinion based on that report. Yet there is no showing that confidential communications protected by the statutory privilege were involved in the staff summary; what we have before us is equally susceptible of the interpretation that the staff analyzed the probation and court records and discussed their personal observations of the defendant. Furthermore, many of the staff would not appear to be psychotherapists as defined in G. L. c. 233, § 20B, and the statute on its face would not apply to conversations between the defendant and those individuals. See *Matter of Pappas,* 358 Mass. 604, 607 (1971), aff'd sub nom. *Branzburg* v. *Hayes,* 408 U.S. 665 (1972). *Commonwealth* v. *Lamb, supra,* did not erect a comprehensive exclusionary rule for all reports and records gathered by the treatment center, but rather called for particularized suppression of those confidential communications protected by the psychotherapist-patient privilege established by G. L. c. 233, § 20B.[2]

The defendant alternatively argues that reports such as the 1970 conference summary are not authorized by statute to be provided to examining psychiatrists. The defendant relies on G. L. c. 123A, § 4, as amended through St. 1974, c. 324, § 1, which provides in part that "[t]he court shall supply to the examining psychiatrists copies of the court record, and the probation officer shall supply them with the probation record of the person committed for examination. The probation record shall contain a history ... [of] such person's previous offences and previous psychiatric examinations and such other information as may be helpful to assist such psychiatrists in making their diag-

---

[2] The fact that Dr. Wedrow read the interviews in the Bridgewater records between Dr. Cohen and the defendant which we held inadmissible in *Commonwealth* v. *Lamb, supra,* does not require the exclusion of Dr. Wedrow's opinion. Dr. Wedrow was carefully interrogated by the trial judge on this point, and to the extent that Dr. Wedrow based his opinion on this material, the judge excluded his opinion. Dr. Wedrow then stated that his opinion was not based on the inadmissible interviews, but rather on independent data found in the records. Dr. Wedrow's exposure to the interviews did not so taint his opinion as to require its exclusion.

nosis." The defendant claims that the 1970 conference summary was neither a "court record" nor a "probation record" and hence could not be received by psychiatrists under § 4. Neither the statute nor our prior decisions support this view.

General Laws c. 123A, § 4, does not specify that psychiatrists may only rely on court and probation records in making their diagnosis. The statute does not provide rigid and exclusive limitations on the materials which may be submitted to psychiatrists, but rather authorizes the furnishing of court and probation records. *Andrews, petitioner,* 368 Mass. 468, 472-477 (1975), *Commonwealth* v. *Bladsa,* 362 Mass. 539 (1972), and *Commonwealth* v. *McGruder,* 348 Mass. 712 (1965), cert. denied, 383 U.S. 972, reh. denied, 384 U.S. 947 (1966), discuss this issue in some detail, and nothing in those decisions suggests that psychiatrists should be unduly restricted in the materials on which they may make their diagnosis.

We have previously indicated that a report of psychiatrists who supervised the examination and diagnosis of a patient under a temporary commitment under G. L. c. 123A was not invalid because the doctors were not on the staff of the treatment center. *Commonwealth* v. *Butler,* 346 Mass. 147, cert. denied, 375 U.S. 912 (1963). In that case the psychiatrists relied on the reports and opinions of the staff including a psychiatrist, a social worker, a psychologist, the director of the center, his administrative assistant, and the security force. *Id.* at 149.

The opinions and observations emerging from a staff conference may prove a helpful basis for psychiatric opinion. The staff may have a unique vantage point from which to observe a defendant. Given the availability of inspection and correction of these records by a person subjected to a c. 123A proceeding, *Andrews, petitioner, supra* at 475; *Sarzen* v. *Gaughan,* 489 F.2d 1076, 1085 (1st Cer. 1973), we find no ground for excluding psychiatric testimony because it is based to some uncertain extent on staff summaries.

2. *Sufficiency of the evidence.* The defendant argues on several grounds that the evidence was insufficient to persuade the trial judge beyond a reasonable doubt that the defendant was an SDP. There was no error in this regard.

General Laws c. 123A, § 6, as amended through St. 1974, c. 324, §§ 2, 3, provides that commitment proceedings may be initiated only if a report of two psychiatrists under § 4 "clearly indicates" that the defendant is an SDP. The defendant argues that Dr. Moore's hesitance to advance a definitive opinion invalidates the trial judge's determination that the defendant is an SDP.

The threshold requirement of a psychiatric report which "clearly indicates" that the defendant is an SDP must be distinguished from the burden of proof at the commitment hearing. The psychiatric report in this case contained an unequivocal statement that the defendant was an SDP, and a more qualified statement that the defendant appeared to be an SDP, but that a definitive opinion could not be given without a personal examination. Such a report satisfies the statutory requirement, particularly because the psychiatric report is merely a preliminary step which may lead to a hearing before a judge as to whether a person is an SDP, and is not a final adjudication of any kind. Cf. *Commonwealth* v. *Childs, post,* 25 (1977), decided this day, in which the psychiatrists at the treatment center were utterly unable to diagnose that defendant on the basis of his record in the absence of personal interviews. In the present case Dr. Moore's scrupulous reluctance to render a definitive conclusion without conducting a personal interview was no bar to a hearing before a judge of the Superior Court to determine if the defendant was an SDP.

Furthermore, the lack of psychiatric unanimity at trial did not by itself render insufficient the evidence on the issue whether the defendant was sexually dangerous. Under *Andrews, petitioner, supra,* the trial judge must be satisfied beyond a reasonable doubt that the defendant

is an SDP. Undoubtedly the Commonwealth must produce sufficient evidence to permit the judge to reach such a determination, but unanimous expert testimony is not necessary. As we said in *Commonwealth* v. *Smith,* 357 Mass. 168, 178 (1970), "Judicial experience with psychiatric testimony makes it abundantly clear that it would be unrealistic to treat an opinion . . . by an expert on either side of . . . [an] issue as conclusive. That is no less so in a case where one party has not secured an expert to express a contrary opinion. The law should not, and does not, give the opinions of experts on either side of . . . [an] issue the benefit of conclusiveness, even if there are no contrary opinions introduced at the trial." Even if there was unanimous expert testimony that a person was an SDP, the trial judge need not reach such a decision unless satisfied beyond a reasonable doubt. Where, as here, the Commonwealth presents sufficient evidence to support a decision, the lack of complete agreement among the psychiatrists does not deprive the trial judge of the power to determine whether the defendant is an SDP. See *Commonwealth* v. *McHoul, ante,* 11 (1977).

The defendant would have us substitute our judgment for that of the trial judge to hold that the testimony of Dr. Wedrow was not reliable and that the evidence was too stale to support a determination that the defendant is presently an SDP. These questions as to the weight and credibility of testimony were clearly for the trier of fact. *Commonwealth* v. *Montecalvo,* 367 Mass. 46, 54 (1975), and no less so when the testimony was that of expert witnesses. *Commonwealth* v. *Smith, supra. Commonwealth* v. *McHoul, supra.*

Finally, we conclude that there was sufficient evidence to support a finding that the defendant was "sexually dangerous" within the statutory definition of those words. The records showed that the defendant was convicted of a 1963 offense of abuse of a female child and of the 1968 offenses of mayhem and assault and battery with a dangerous weapon. These offenses as explicated by the expert testimony furnish ample basis for a finding that the de-

fendant was an SDP. The decision of the Superior Court judge is therefore affirmed.

*Judgment affirmed.*