Commonwealth *v.* Geary.

COMMONWEALTH *vs.* RALPH GEARY.

Bristol.   November 16, 1977. — December 8, 1977.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Sex Offender.*

For the purpose of a preliminary commitment of a prisoner to the Bridgewater treatment center pursuant to the first paragraph of G. L. c. 123A, § 6, information concerning the details of the crime for which the prisoner was convicted provided a rational basis for temporary commitment, even though the prisoner had not been convicted of any sex offense. [715-716]

An argument by a prisoner that there was no basis for a temporary commitment to the Bridgewater treatment center pursuant to the first paragraph of G. L. c. 123A, § 6, because the record provided no admissible evidence of sexual misconduct which would support proceedings for an indeterminate commitment under the fourth and sixth paragraphs of § 6 was without merit and premature. [716-717]

MOTION for preliminary commitment filed in the Superior Court on December 4, 1975.

The proceeding was heard by *McGuire,* J.

*Matthew H. Feinberg* for the defendant.

*Lance J. Garth,* Assistant District Attorney, for the Commonwealth.

GRANT, J.   The defendant has appealed (by permission) from an order entered in the Superior Court that he be committed to the treatment center at the Massachusetts Correctional Institution at Bridgewater (see G. L. c. 123A, § 2) for examination and diagnosis in accordance with the provisions of the first paragraph of G. L. c. 123A, § 6, as most recently amended by St. 1974, c. 324, §§ 2 and 3.[1] The following is a summary of the events which preceded the entry of that order.

---

[1] "[1] If a prisoner under sentence in any jail, house of correction or prison, or in the custody of the department of youth services, appears to the sheriff, keeper, master, superintendent or commissioner

In 1972 the grand jury in Bristol County returned an indictment against the defendant for first degree murder. In 1974 the district attorney entered a nolle prosequi of so much of the indictment as alleged first degree murder. The defendant pleaded guilty to second degree murder and received a life sentence to be served at the Massachusetts Correctional Institution at Walpole. At a later date which is not material the defendant was transferred to the Massachusetts Correctional Institution at Concord (Concord), where he apparently sought furlough privileges.

On December 4, 1975, the superintendent of Concord filed a motion in the Superior Court in Bristol County that the defendant be committed to the center at Bridgewater for a period not exceeding sixty days for the purpose of examination and diagnosis pursuant to the first paragraph of the aforementioned § 6. That motion was accompanied by (a) the signed report of a psychiatrist appointed by the Commissioner of Mental Health (Commissioner) that he (the psychiatrist) had examined the defendant at

---

of youth services who has him in custody or to the district attorney for the district in which such prisoner was sentenced to be a sexually dangerous person and in need of the care and treatment provided at the center, such officer may notify the commissioner of mental health, who shall thereupon cause such prisoner to be examined by a psychiatrist at the institution wherein he is confined. [2] Such psychiatrist shall report the results of his examination in writing to the sheriff, keeper, master or superintendent, commissioner of youth services, or district attorney, and if such report indicates that such person may be a sexually dangerous person, the sheriff, keeper, master or superintendent, commissioner of youth services, or district attorney, after having notified said person of the nature of the proceedings and possibility of his commitment to the center, shall thereupon transmit the report to the clerk of the courts for the county wherein such prisoner was sentenced ... together with a motion to commit such person to the center ... for examination and diagnosis for a period not exceeding sixty days. [3] At least fourteen days prior to acting upon said motion, the court shall notify said person that it is considering his commitment to the center ... for a period not exceeding sixty days, and shall inform said person of his right to be represented by counsel during the pendency of said motion or any subsequent commitment petition. [4] If the court grants the motion, it shall commit such person under the provisions of [G. L. c. 123A, § 4] insofar as may be applicable." The bracketed numbers [1] through [4] have been inserted for ease of reference in the body of our opinion.

Concord and had formed the belief that the defendant "may be" a sexually dangerous person (SDP) and (b) a so called "Sex Offender Summary" prepared by someone in the Department of Correction. That summary contains criminal and psychiatric histories of the defendant, as well as summaries of information in the possession of a local police department concerning a sexual assault on a fifteen-year-old girl which the defendant is supposed to have committed in 1971 (when he was a juvenile) and of information in the possession of the State police concerning the murder committed by the defendant in 1972 (when he was an adult). Compare *Commonwealth* v. *Childs*, 372 Mass. 25, 26 n.2 (1977). A portion of the latter summary is quoted in the margin.[2]

The defendant appears (from the docket) to have been notified of the filing and import of the superintendent's motion. The defendant appeared by counsel and moved for an evidentiary hearing on the superintendent's motion and to "dismiss" that motion. An evidentiary hearing was conducted on February 27, 1976, at which the defendant called and cross examined the psychiatrist whose report had accompanied the superintendent's motion and also testified in his own behalf. The cross examination and testimony were directed largely toward discrediting the psychiatrist by illuminating factual errors which the defendant claimed were to be found in various portions of the psychiatrist's report.[3] The Commonwealth called no witnesses. At the

---

[2] "The officers ... accompanied ... [Geary] to the location of the incident and found the nude body of a female. The body was nude except for ripped remains of a blue jersey under the upper torso. She was lying on her back with knees raised and spread, arms flat on the ground and raised above her head. There were three long thin bruise marks on her right bicep and bruises on her neck. Clothing and personal belongings were found at the scene, varied distances from the body.... On 9-18-72 an autopsy was performed and cause of death was found to be manual strangulation."

[3] The defendant testified that he had seen and studied the institutional records concerning his case which were available at Concord. There was nothing to suggest that the defendant or his counsel had been or would be deprived of a reasonable opportunity to correct any

conclusion of the hearing the judge allowed the superintendent's motion. The defendant appealed; the order allowing the motion has been stayed pending the issuance of our rescript on the appeal.

It will be helpful at the outset, before addressing ourselves to the particular arguments advanced by the defendant,[4] to delineate the relatively narrow issues which are open for consideration by the judge at a hearing on a superintendent's[5] motion for a preliminary commitment under the first paragraph of § 6 (*supra* note 1). First, it must be established to the satisfaction of the judge (from the papers filed with the motion or otherwise) that there is some rational basis for its appearing to the superintendent that the prisoner is a SDP "and in need of the care and treatment provided at the center." Second, it must appear that a psychiatrist appointed by the Commissioner has examined the prisoner and reported in writing to the superintendent that the prisoner "may be" a SDP. Third, it must appear that the superintendent has, before filing his motion, notified the prisoner of "the nature of the proceedings and the possibility of his commitment to the center." And fourth, it must appear that the prisoner has been given the notice and information required by the third sentence of the first paragraph of § 6.

The Commonwealth need not offer any evidence, and the judge need make no finding, on the question whether the prisoner is in fact a SDP (see *Lamb, petitioner,* 368 Mass. 491, 493-494, 500 [1975]), such as would be required at the hearing on a petition for an indeterminate commitment brought under the fourth and sixth paragraphs of § 6 or at the hearing of a petition brought under the

---

factual errors that might exist in those records. See *Andrews, petitioner,* 368 Mass. 468, 475-476, 482 (1975); *Sarzen* v. *Gaughan,* 489 F. 2d, 1076, 1084-1085 (1st Cir. 1973).

[4] As will be seen, none of those arguments is constitutional in nature.

[5] In the ensuing general discussion the word "superintendent" is intended to include the "sheriff, keeper, master, . . . commissioner of youth services . . . [and] the district attorney" who are also referred to in the first sentence of the first paragraph of § 6.

second paragraph of G. L. c. 123A, § 9, as appearing in St. 1966, c. 608 (see *Andrews, petitioner,* 368 Mass. 468, 485-486, 489-490 [1975]; *Lamb, petitioner,* 368 Mass. at 500-501 [1975]; *Commonwealth* v. *McHoul,* 372 Mass. 11, 12-16 [1977]; *Thompson, petitioner, ante,* 282, 284 [1977]). The judge makes no determination whether there is probable cause to believe that the prisoner is a SDP. Contrast G. L. c. 276, § 38, as construed in *Myers* v. *Commonwealth,* 363 Mass. 843, 849-850 (1973). All that is required of the judge in this area is a determination that the prisoner may be a SDP.

With all the foregoing in mind we proceed to a consideration of the particular arguments advanced by the defendant. The transcript of the hearing on the present motion is susceptible to the interpretation that the defendant has not been convicted of any form of sexual assault on a child under the age of sixteen (such as would appear from the aforedescribed summary), in the sense that on his appeal from a District Court conviction he was allowed to plead guilty in the Superior Court to the lesser offence of assault and battery. The defendant moves from that point to an argument that the superintendent at Concord had no rational basis for triggering SDP proceedings because the defendant has never been convicted of any form of sex offence and because there is no evidence that the defendant has been guilty of any sexual misconduct while in prison. The defendant attempts to brush aside the observation (if not the holding) in *Commonwealth* v. *Peterson,* 348 Mass. 702, 704 (1965), cert. denied, 384 U. S. 909 (1966), that § 6 contains no requirement that a defendant "have been previously convicted of a sex offence or have been found guilty of sexual misbehavior in prison." Putting to one side any question as to whether the defendant may have been convicted of a sex offence on a young girl, the superintendent could rationally have concluded from the State police information available to him (*supra* note 2) that the defendant had (at the very least) intended to rape the woman he had strangled. Once that conclusion was drawn, the superintendent had a rational basis

for initiating proceedings under the first paragraph of § 6.

The only remaining argument not already considered is that there is no basis for a temporary commitment under the first paragraph of § 6 because the present record contains no admissible evidence of sexual misbehavior by the defendant which would provide a point of departure for proceedings for an indeterminate commitment under the fourth and sixth paragraphs of § 6. Stripped of its trappings, the argument is that the police allegations of sexual misconduct found in the aforementioned summary would be inadmissible at the evidentiary hearing on any petition which might subsequently be filed under the fourth paragraph of § 4 (see *Commonwealth* v. *Bladsa*, 362 Mass. 539, 540-541 [1972]; *Commonwealth* v. *Lamb*, 1 Mass. App. Ct. 530, 532-533 [1973], *S.C.* 365 Mass. 265 [1974], 372 Mass. 17 [1977]; *Thompson, petitioner, supra* at 284), and that those allegations constitute "an essential condition precedent to a final determination of sexual dangerousness which [can] not be supplied by examination and observation during [a] temporary commitment."

The argument appears to overlook the scope of permissible future proceedings. First, the two or more psychiatrists who will be appointed to examine and diagnose the defendant at the center (G. L. c. 123A, §§ 4 and 6 [third par.]) are permitted to take the police allegations of sexual misconduct into consideration in arriving at their respective opinions as to whether the defendant is a SDP, even though the hearsay rule would prevent the psychiatrists from testifying to the contents of those allegations at any subsequent hearing on the question of indeterminate commitment. *Andrews, petitioner*, 368 Mass. at 475-476. Second, in formulating their opinions the psychiatrists will not be confined to a consideration of those allegations and what they may be able to learn from interviewing the defendant. See *Commonwealth* v. *Lamb*, 372 Mass. at 22; *Commonwealth* v. *Childs*, 372 Mass. at 29. Finally, we note that the argument is premature; it overlooks the possibility that at any hearing on the question of indeterminate commitment the Commonwealth may be able to prove the

facts recited in the police reports by competent evidence, including eyewitness testimony as to the condition in which the police found the body of the murder victim. See *Andrews, petitioner,* 368 Mass. at 476-477.

The order allowing the motion for preliminary commitment is affirmed.

*So ordered.*