COMMONWEALTH *vs.* RONALD DENHAM.

Worcester. October 10, 1979. — November 21, 1979.

Present: GRANT, ARMSTRONG, & KASS, JJ.

*Sex Offender. Practice, Civil,* Sex offender.

A sentence is not a prerequisite to a valid commitment under G. L. c. 123A, § 5, of a person who has been convicted of one of the offences enumerated in § 4. [727-728]

A psychiatric report submitted in a commitment proceeding under G. L. c. 123A, § 5, in which the psychiatrist concluded that he could not say that the defendant was not sexually dangerous, when taken in conjunction with another report stating that the defendant was a sexually dangerous person, constituted a sufficient basis for entertaining the commitment proceedings. [728-729]

In a proceeding under G. L. c. 123A, § 5, the judge was warranted in basing his decision on the facts in reports submitted by psychiatrists and disregarding their conclusions as to sexual dangerousness. [730-731]

In a proceeding under G. L. c. 123A, § 5, the judge did not err in concluding that aggression, as used in § 1, includes nonviolent sexual advances by adults upon children and injury, as used in that section, is not limited to physical injury but includes psychological, mental or emotional trauma. [731]

Taken in context, certain remarks made by a judge at the close of the defendant's argument at a hearing for commitment under G. L. c. 123A, § 5, were nothing more than an extemporaneous comment on the credibility of the psychiatric testimony and the burden assumed by the judge in such a proceeding. [731-732]

PETITION for commitment filed in the Superior Court on November 2, 1977.

The case was heard by *Meagher, J.*

*Michael N. Abodeely, Jr.,* for the defendant.

*Daniel F. Toomey,* Assistant District Attorney, for the Commonwealth.

GRANT, J. The defendant has appealed from a 1978 decision of the Superior Court, rendered at the conclu-

sion of proceedings conducted under the provisions of G. L. c. 123A, § 5, which resulted in the defendant's being committed as a sexually dangerous person[1] (SDP) to the treatment center established at the Massachusetts Correctional Institution at Bridgewater (center) for the indeterminate statutory period of one day to life. The following is a summary of the relevant proceedings, as gleaned from the docket entries and the portions of the record which have been reproduced in the appendix to the defendant's brief.

In 1965 the defendant was convicted in the Superior Court and sentenced on four counts of sodomy. In 1969 he was committed to the center in proceedings conducted under the provisions of G. L. c. 123A, § 6. In 1973 he filed a petition for his discharge under the provisions of G. L. c. 123A, § 9, and in 1974 he was found to be no longer an SDP and was ordered released, subject to terms and conditions which included two years' probation. Later in that same year a warrant was issued from a District Court for the defendant's arrest on a new charge of sodomy, allegedly committed following his release. Still later in that year the defendant was arrested in Delaware on multiple charges of the offensive touching of minors. The defendant was returned to Massachusetts following dismissal of the Delaware charges and, on May 20, 1975, was brought into the Superior Court on a probation surrender.[2] The 1974 sodomy com-

---

[1] A "sexually dangerous person" is defined in G. L. c. 123A, § 1, as appearing in St. 1958, c. 646, § 1, as "Any person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive behavior and either violence, or aggression by an adult against a victim under the age of sixteen years, and who as a result is likely to attack or otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires."

[2] The written findings submitted by the probation officer on that occasion describe the Delaware proceedings as having involved eleven counts of "Offensive Touching, Sexual Assault" and recite that "[the defendant] admitted touching several boys between the ages of eight and thirteen."

plaint was brought up from the District Court; the defendant waived indictment and pleaded guilty to the complaint. The judge[3] found that the defendant had violated the terms of his 1974 release and probation, purported to revoke that release and probation, and ordered that the defendant be again committed to the center.[4] The Commonwealth did not move for sentence on the new sodomy conviction, and the defendant has never been sentenced thereon.

On May 14, 1976, the defendant filed a pro se petition under G. L. c. 123A, § 9, but it does not appear that that petition was ever pressed. On August 9, 1977, following the decision in *Commonwealth* v. *Travis,* 372 Mass. 238, 246-251 (1977), counsel for the defendant filed a motion for reconsideration of the 1975 order of commitment. That motion came on for hearing on November 1, 1977, by which time the court had received written reports from two psychiatrists which appeared to qualify as the type of report contemplated by G. L. c. 123A, §§ 4 and 5. The judge directed the assistant district attorney to file a motion for the commitment of the defendant under § 5 (which was done on November 2, 1977), and the case was continued for a combined hearing on the respective motions of both parties. That hearing was held on February 27, 1978, and was followed by a new determination that the defendant is an SDP and by the further order of commitment to the center which is the subject of the present appeal.

1. The defendant's first point on appeal is that it was error to deny his motion for reconsideration of the 1975

[3] The same judge presided over this and all the subsequent proceedings referred to in this opinion.

[4] The judge also purported to make a fresh finding that the defendant was an SDP as of the date of that hearing, but it is now common ground that the 1975 order of commitment cannot be justified under the provisions of G. L. c. 123A, §§ 4 and 5, because the judge did not then have before him any psychiatric report of the type required by those sections.

commitment.[5] It was decided in the *Travis* case in 1977 (372 Mass. at 246-251) that a judge lacks the power to vacate an earlier finding that the defendant is no longer an SDP, and the defendant contends that the *Travis* case should be applied retroactively, with the results that the motion for reconsideration should have been allowed and the defendant discharged from the center. We find it unnecessary to respond to that contention. As will appear shortly, we find no error in the 1978 commitment under G. L. c. 123A, § 5, and the necessary corollary is that the defendant has no present right to be released from the center.

2. The second point is that the Commonwealth was barred from utilizing the 1975 sodomy conviction as the vehicle for initiating proceedings under G. L. c. 123A, § 5, because it did not move for sentence on that conviction within the seven-day period contemplated by G. L. c. 279, § 3A. The point might have had a measure of validity during the period when the relevant statutory provisions on the definitive commitment of SDPs presupposed a sentence (see G. L. c. 123A, §§ 4, 5 and 8, as originally inserted by St. 1954, c. 686, § 1), but it has been clear ever since the amendments of G. L. c. 123A, §§ 4 and 5, which were effected by St. 1958, c. 646, § 1, that a sentence is no longer a prerequisite to a valid commitment of a person who has been convicted of one of the offences (such as sodomy) which are enumerated in G. L. c. 123A, § 4. Section 4, as most recently amended by St. 1974, c. 324, § 1, contemplates a temporary commitment to the center for sixty days' observation *"prior to imposing sentence"* (emphasis supplied). Section 5 in its present form (St. 1958, c. 646, § 1) is explicit that "[i]f the court finds that the person is [an SDP], it may, *in lieu of* the *sentence* required by law for the original offence, commit such person to the center" (emphasis supplied),

---

[5]There was no express order denying that motion, but we assume, as do the parties, that the motion was impliedly denied.

and it is now settled that each successive conviction of a § 4 offence triggers the Commonwealth's right to seek a fresh commitment under §§ 4 and 5. *Commonwealth* v. *Travis,* 372 Mass. at 249 n.5, 250-251. See also *Gomes* v. *Gaughan,* 471 F.2d 794, 797-798 (1st Cir. 1973). Neither § 4 nor § 5 contains an express limitation on the time within which the Commonwealth must move following a conviction of a § 4 offence. The time within which the Commonwealth moved was reasonable in light of all the circumstances. The present case presents no compelling reason for rewriting the statutes in the manner desired by the defendant, even if it were our province to do so.

3. One of the two § 4 psychiatric reports relied on by the judge in instructing the assistant district attorney to move under § 5 expresses the author's unequivocal opinion that "this man is still a Sexually Dangerous Person." The other such report concludes with the following: "I cannot say that he is not sexually dangerous. However, with proper supports for continued therapy with Treatment Center personnel and more appropriate living and vocational arrangements, I believe that Mr. Denham could be returned to the community at some time in the future. There is no doubt that he will continue his homosexual relationships, but I feel that he has the capacity to do so in a more discreet way with appropriate choice of partners that will not compromise his position. His regression to choosing an inappropriate object of his sexual drives seems to have been an expression of his helplessness in regard to his support systems being inadequate to help him tolerate and integrate the demands of non-institutional living situation. At this point I recommend a re-evaluation of Mr. Denham's treatment program to address themselves to these issues."

The defendant contends that this report does not "clearly indicate" sexual dangerousness within the meaning of § 5, with the result that the court lacked the power to conduct further proceedings under that section. See *Commonwealth* v. *Childs,* 372 Mass. 25, 27-28, 30 (1977),

and *Commonwealth* v. *Hall,* 6 Mass. App. Ct. 918 (1978), both of which were decided under the "clearly indicates" language of the fourth paragraph of the present G. L. c. 123A, § 6, as in effect prior to St. 1978, c. 478, § 72. A similar contention was advanced and rejected in *Commonwealth* v. *Lamb,* 372 Mass. 17, 18, 23 (1977), which was also decided under said § 6.[6] We are not persuaded that the reporter's fortuitous use of a double negative detracts from an otherwise clear indication that the defendant should remain at the center because he continues to be sexually dangerous. Accordingly, we hold that the second report, taken in conjunction with the first report, constituted a sufficient basis for entertaining the commitment proceedings that were conducted under § 5.

4. The two § 4 reports considered in part 3 hereof were, by agreement, marked as exhibits at the hearing held on November 1, 1977, in accordance with the provision in § 5 that "[a]ny psychiatric report filed under this chapter shall be admissible in evidence in such proceeding." The center's entire file on the defendant, including the formal written recommendation of the Department of Mental Health that the defendant not be released from the center, was introduced in evidence at the adjourned hearing held on February 27, 1978.[7] Three psychiatrists testified at that hearing, two called by the Commonwealth and one by the defendant; the ultimate opinion of each was that the defendant was not an SDP. The defendant seizes on that and other facets of the case as the bases for several arguments in support of a general contention that "the trial judge erred in finding that [the defendant] was sexually dangerous."[8]

---

[6] The Commonwealth has presented no convincing argument in support of its contention that the quoted words should be given a more lenient construction when employed in § 5 than when employed in § 6.

[7] The defendant has now abandoned his earlier objection to the admissibility of the file.

[8] It should be understood at the outset of our discussion that the defendant advances no contention that the evidence was insufficient as

(a) The defendant argues first that the judge erred in rejecting the unanimity of psychiatric opinion on the question whether the defendant was an SDP. The argument overlooks the precepts of *Commonwealth* v. *McHoul,* 372 Mass. 11 (1977), that the "determination of sexual dangerousness is a legal and not a psychiatric question" (372 Mass. at 15) and that "the statutory requirement of prediction must rest with the judge, based on all the evidence, and not be delegated to experts" (372 Mass. at 16). The present case does not require us to consider how far a judge may go in discounting psychiatric testimony in contested proceedings under G. L. c. 123A, § 5 or § 6 (see *Commonwealth* v. *McHoul,* 372 Mass. at 14-15 n.2, 16; *Commonwealth* v. *Lamb,* 372 Mass. 19, 23-24; *Commonwealth* v. *Childs,* 372 Mass. at 30), because it is apparent from the record that the judge credited many of the salient features of the psychiatric testimony. He learned from the two psychiatrists called by the Commonwealth that the 1965 sodomy convictions were grounded on the defendant's relations with an eight or nine year old boy.[9] The second psychiatrist called by the Commonwealth used the present tense in characterizing the defendant as a "child molester or a pedophile." The defendant's psychiatrist delivered himself of the following: "He has needed children in the past; and I would not be surprised if, in the future, he didn't need children also."

---

matter of law to warrant a rational trier of fact (*Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 [1979]) in concluding beyond a reasonable doubt that the defendant was an SDP. See *Andrews, petitioner,* 368 Mass. 468, 485, 486, 489 (1975); *Lamb, petitioner,* 368 Mass. 491, 499, 500, 501 (1975); *Commonwealth* v. *Lamb,* 372 Mass. at 23-24; *Commonwealth* v. *Walsh,* 376 Mass. 53, 55 (1978).

[9]The judge was already aware of the facts underlying the 1975 conviction because he had accepted the defendant's plea to the sodomy complaint at the hearing held on May 20, 1975. The transcript of that hearing, which contained the boy's complaint to the police, was, by agreement, made a part of the record in the present proceedings. See *Andrews, petitioner,* 368 Mass. at 477.

It is clear from the judge's findings that he adopted all the foregoing testimony as true. Indeed, the findings are larded with quotations from the testimony. On analysis, what the judge did was adopt certain of the subsidiary conclusions of the psychiatrists in the course of arriving at his own ultimate conclusion. There was nothing wrong in that. *Commonwealth* v. *Gomes,* 355 Mass. 479, 482-483 (1969). *Commonwealth* v. *Walsh,* 376 Mass. 53, 58 (1978).

(b) The defendant points to the absence of any evidence of violence in his relations with young boys and asks us to fault the judge for his dialogues with the psychiatric witnesses concerning their respective understandings of the language "agression by an adult against a victim under the age of sixteen years" which is found in G. L. c. 123A, § 1 (note 1, *supra*), and for his opinion, expressed in his findings and order, that "[t]he 'aggression' to which Section 1 refers includes . . . non-violent sexual advances by adults upon children and the 'injury' to which Section 1 refers is not limited to physical injury but may well include psychological, mental or emotional trauma." The judge was clearly correct on both points. Section 1 employs the word "violence" and the phrase "aggression by an adult against a victim under the age of sixteen" in the disjunctive and as separate and distinct concepts. That the "injury" referred to by the statute need not be physical in nature is settled by the court's remark in *Commonwealth* v. *Dagle,* 345 Mass. 539, 543, cert. denied, 375 U.S. 863 (1963), that "[o]ne kind of injury with which the statute is concerned is the establishing in boys at a formative age of unnatural habits and emotions which they may never be able to overcome."

(c) Finally, the defendant points with displeasure to the following remark made by the judge during the defendant's closing argument: "All I can think of is the first person who was released from the sex center. After all the experts came in and testified, the Judge permitted him to be released, which happened right here in

Worcester. One month later, we had a little dead boy in a vacant house." Taken in context, the remark was nothing more than an extemporaneous comment on the credibility of the psychiatric testimony (which was expressly echoed in the judge's written findings) and a reflection on the awesome burden assumed by a judge in the course of deciding whether to commit someone for a period which may endure for the balance of his life.

*Order of commitment affirmed.*