## ERNEST HOSIE, petitioner.

No. 00-P-704.

Suffolk. January 11, 2002. - May 1, 2002.

Present: JACOBS, KANTROWITZ, & KAFKER, JJ.

*Sex Offender. Practice, Criminal,* Psychiatric examination. *Habeas Corpus.*

The petitioner failed to demonstrate that he was entitled to habeas corpus relief based on a claim that the report of two psychiatrists did not "clearly indicate," within the requirements of G. L. c. 123A, § 6, that the petitioner was a sexually dangerous person. [626-628]

PETITION for writ of habeas corpus filed in the Superior Court Department on June 23, 1999.

The case was heard by *Vieri Volterra,* J.

The case was submitted on briefs.

*Stan Goldman,* Committee for Public Counsel Services, for the petitioner.

*Nancy Ankers White,* Special Assistant Attorney General, & *Maryanne E. Kilty* for the Commonwealth & others.

JACOBS; J. While serving a State prison term for rape, the petitioner, in 1986, was adjudged a sexually dangerous person under the provisions of G. L. c. 123A, § 6,[1] and committed to a term of one day to life at a treatment center. Before us is the petitioner's appeal from the denial by a Superior Court judge of

---

[1] The underlying events in this case occurred at a time when a prior version of G. L. c. 123A was in effect, and before enactment of the version appearing in St. 1985, c. 752, § 1. In this decision we refer to c. 123A, §§ 1, 4, and 6, as appearing in St. 1958, c. 646, § 1. Amendments subsequently made through St. 1969, c. 838, § 58; St. 1974, c. 324, § 1; and St. 1978, c. 478, § 72, are not relevant.

In 1990, sections of this chapter were repealed by St. 1990, c. 150, § 304. Neither that repeal nor the enactment of new commitment provisions affect the present case. For a discussion of that repeal and the new provisions, see *Commonwealth* v. *Bruno,* 432 Mass. 489, 494-497 (2000).

his petition for habeas corpus relief filed in June, 1999. We affirm that denial.

In 1976, the petitioner, then fifteen years old, pleaded guilty to charges of kidnapping and raping a sixteen year old female at knife point and was sentenced to concurrent twelve year terms at MCI, Concord. In 1978, he escaped, was apprehended, and pleaded guilty to charges of armed robbery and kidnapping. He was sentenced to concurrent from four to eight year terms at MCI, Walpole, to commence from and after his earlier sentences. In 1982, he was transferred to a halfway house and, within hours of his arrival, sexually assaulted an adult female counselor at knife point. He pleaded guilty to so much of an indictment for aggravated rape as charged rape and was sentenced to an additional from four to six year term at MCI, Walpole.

During that incarceration, the superintendent, in 1984, requested that the petitioner be screened for sexual dangerousness. After screening, followed by a sixty-day period of confinement for examination and diagnosis at the Massachusetts Treatment Center at Bridgewater, two psychiatrists, in 1986, filed reports in the Superior Court pursuant to G. L. c. 123A, § 4, one concluding the petitioner was sexually dangerous, and the other that he was not. The Commonwealth filed a petition for a hearing to determine whether the petitioner was a sexually dangerous person and for commitment pursuant to § 6. Prior to the hearing, the judge denied the petitioner's oral motion to dismiss the petition for commitment on the asserted ground that the reports were contradictory and therefore did not "clearly indicate" he was sexually dangerous. At the time, G. L. c. 123A, § 6, required that the report of two psychiatrists "clearly indicate[]" that the person is a sexually dangerous person.[2] After the hearing the judge issued a written decision in which he noted as a "threshold matter" that the psychiatrist who opined that the petitioner was not sexually dangerous failed to apply the proper legal standard. The judge concluded from

[2]Under the new procedures in G. L. c. 123A, § 13, inserted by St. 1999, c. 74, § 8, a written report of two qualified examiners is still required after a sixty-day period of confinement for examination and diagnosis, but the language requiring that the report clearly indicate sexual dangerousness does not appear.

the evidence at the hearing that the petitioner was a sexually dangerous person.

The petitioner argues that, because the opinions of the two psychiatrists were contradictory, their report did not satisfy the "clearly indicates" prerequisite of G. L. c. 123A, § 6, and, relying on *Commonwealth* v. *Hall*, 6 Mass. App. Ct. 918 (1978), claims that the hearing should not have been held and that he should be released.[3] In that case, the court held that a report containing "totally contradictory opinions" did not meet the threshold requirement of the statute and ordered that the petition under § 6 be dismissed. *Id.* at 918-919.

Contrary to the petitioner's assertion, *Commonwealth* v. *Hall* is distinguishable because the differing conclusions of the psychiatrists in the present case may not be treated as truly contradictory. See *Cline, petitioner*, 16 Mass. App. Ct. 958, 959 (1983), where, because the conclusion of one doctor was "erroneously based, his opinion [was] entitled to little if any weight," and contrasting *Commonwealth* v. *Hall* as a case in which the opinions were "in equipoise." The separate report[4] of Dr. Milton Gipstein, who concluded that, although the petitioner had been convicted of two rapes, "his crimes do not appear to be compulsive or driven in nature," reveals on its face that his opinion is not entitled to determinative weight and that he may have applied an erroneous legal standard. Given the definition of a sexually dangerous person[5] as one whose sexual misconduct is evidenced by repetitive, compulsive or violent behavior, Dr.

---

[3] The petitioner gains nothing in claiming the statutory prerequisite is "jurisdictional." Our cases treat this issue as a "threshold requirement." *Commonwealth* v. *Hall*, 6 Mass. App. Ct. 918, 918 (1978), quoting from *Commonwealth* v. *Lamb*, 372 Mass. 17, 23 (1977).

[4] In this case, the two psychiatrists reported to the court on separate and identical standard forms of the Department of Mental Health, identified as form L.M. No.2 (Rev. 1961). Both reports contain conclusory statements (is or is not sexually dangerous) in the spaces provided for diagnosis and similarly brief statements in the comments and recommendation sections. There are no attachments.

[5] The definition of a sexually dangerous person is set out in G. L. c. 123A, § 1, as appearing in St. 1958, c. 646, § 1:

"Any person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive behavior and either violence, or aggression by an adult against a victim under the age of sixteen years, and who as a result is likely to attack or

Gipstein's failure to take into account the petitioner's unequivocal admissions, through his guilty pleas, of repetitive violent sexual crimes militates against his report being treated as completely counterbalancing the clear indication of sexual dangerousness in the report of Dr. James Koster, the other reporting psychiatrist.

In any event, "[u]nanimity certainly would not be required in a 'psychiatric report [which] is merely a preliminary step which may lead to a hearing before a judge as to whether a person is [a sexually dangerous person], and is not a final adjudication of any kind.' " *Cline, petitioner, supra* at 958, quoting from *Commonwealth* v. *Lamb*, 372 Mass. 17, 23 (1977). "The threshold requirement of a psychiatric report which 'clearly indicates' that the defendant is [a sexually dangerous person] must be distinguished from the burden of proof at the commitment hearing." *Commonwealth* v. *Lamb, supra* at 23. Accordingly, the hearing judge acted reasonably in stating that Dr. Gipstein "failed to apply the proper legal standard in concluding that [the petitioner] was not a sexually dangerous person," and that his report did not affect the unequivocal report of Dr. Koster.[6]

Moreover, the record of the hearing retrospectively supports the judge's determination that Dr. Gipstein's report should not have been given a threshold preclusive effect. Dr. Gipstein testified that "[t]here is certainly loads of evidence that [the petitioner] is impulsive," that he saw "characterological problems in [the petitioner] that indicate a long-standing poor impulse control," making him "globally at risk for what is called acting out, for breaking the law, for transgressing social interactions." He opined that because he had not seen evidence of "continued impulsive lack of control, or any sexual misbehavior" since 1982, the petitioner is unlikely to engage in such conduct in the future. However, he later insinuated the fol-

---

otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires."

[6]The petitioner's reliance on *Commonwealth* v. *Childs*, 372 Mass. 25 (1977), is misplaced. It is "[i]n the absence of such a report [that] the Commonwealth . . . cannot[] file a petition for commitment." *Id.* at 30. See also *Commonwealth* v. *Purdy*, 408 Mass. 681, 686 (1990) (judge was "deprived . . . of the power to make a lawful finding as to sexual dangerousness" where report of only one examiner was available).

lowing attempt at clarification: "When I say there's nothing in the record to indicate that he would ever act out impulsively again, I can't say that." He went on to state that the petitioner could benefit from treatment. He added that "essentially at this time [the petitioner] could spend five or ten years in the Treatment Center, in an incarcerated type of situation and work through the kind of program that I described, the Community Access Program." Dr. Gipstein appeared to be influenced by the petitioner's explanation that the rape he committed when he was fourteen was largely the result of being in the company of bad influences and that he was a follower of other participants in the crime. Dr. Gipstein also accepted the petitioner's version of the rape at the halfway house as an attempt at consensual sexual intercourse, apparently ignoring the record of his guilty plea to this crime. Significantly, Dr. Gipstein's conclusory finding that the petitioner is not a sexually dangerous person does not detract from his own and Dr. Koster's unequivocal indication that the petitioner should remain in the treatment center. Compare *Commonwealth* v. *Lamb, supra* at 18, 23; *Commonwealth* v. *Denham*, 8 Mass. App. Ct. 724, 728-729 (1979).[7]

In light of our decision, it is unnecessary that we consider whether the petitioner waived his right to question his commitment by his voluntary dismissal of the appeal of his adjudication as a sexually dangerous person, and whether the denial of his earlier petition for habeas corpus relief, filed in 1998, should bar review of the petition before us under the doctrine of res judicata.

*Order affirmed.*

---

[7]Under G. L. c. 123A, § 9, the petitioner is entitled to file a petition for examination and discharge once in every twelve months. While we do not rely on any evidence of his treatment and examination subsequent to the examinations in 1986 in this case, we note the Commonwealth has supplied a copy of the report of an examiner dated January 25, 1997, to the Superior Court, which summarizes several prior treatment reviews and concludes that the petitioner should be considered a sexually dangerous person.