COMMONWEALTH vs. MERRILL E. WALSH.

Middlesex. March 9, 1978. — July 20, 1978.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, & LIACOS, JJ.

*Sex Offender. Practice, Civil,* Sex offender. *Evidence,* Sexual misbehavior, Sex offender.

In order to have a defendant adjudicated a sexually dangerous person under G. L. c. 123A, it was incumbent upon the Commonwealth to prove its case beyond a reasonable doubt even though the defendant was serving a term of life imprisonment prior to the initiation of commitment proceedings. [55–56]

In a proceeding under G. L. c. 123A, evidence that the defendant had committed an offense fourteen years earlier, which could be found to be of a compulsive, sexual nature, together with the testimony of two psychiatrists who had examined the defendant, was sufficient to warrant a finding beyond a reasonable doubt that the defendant was sexually dangerous as defined in c. 123A, § 1. [56–60]

Where it appeared in a proceeding under G. L. c. 123A, in which the defendant's alcoholism was a significant factor on which the judge relied in finding the defendant's misconduct was compulsive, that the judge, by implying that the defendant had to present convincing proof that his alcoholism was under control, may have improperly shifted the burden of proof to the defendant, the case was remanded to permit the judge to reconsider or clarify his findings or to receive further evidence if necessary. [60–61]

PETITION for commitment filed in the Superior Court on May 3, 1974.

The case was heard by *Travers,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Susan J. Baronoff* for the defendant.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. This is an appeal from a decision of a Superior Court judge committing the defendant to the treatment center at the Massachusetts Correctional Institution at Bridgewater (treatment center) for an indeterminate period of from one day to life, as a sexually dangerous person, under G. L. c. 123A. We hold that the case should be remanded to the Superior Court for further proceedings consistent with this opinion.

On February 14, 1963, the defendant pleaded guilty to murder in the second degree and received a sentence of life imprisonment to be served at the Massachusetts Correctional Institution at Walpole. At a later date he was transferred to the Massachusetts Correctional Institution at Norfolk (Norfolk).

Approximately ten years later, on the motion of the superintendent of Norfolk, the defendant was committed after a hearing to the treatment center for a sixty-day period of observation and diagnosis to determine whether he was a sexually dangerous person.[1] On January 23, 1974, the judge allowed a motion to extend the time for observational commitment and the defendant was remanded to the treatment center for an additional thirty days. Following the filing of a psychiatric report, on May 3, 1974, the Commonwealth filed a petition to commit the defendant to the treatment center for from one day to life. After several continuances and an unexplained lapse of time between August, 1974, and June, 1975, on June 20, 1975, and again on November 25, 1975, counsel jointly moved for and obtained an order to have the defendant reexamined by the Commonwealth's psychiatrists.

---

[1] In November, 1963, preliminary proceedings were initiated for the commitment of the defendant to the treatment center. After a sixty-day observation period, a psychiatric report filed with the Superior Court concluded that the defendant "is a sexually dangerous person" and that he should be reexamined if the question of parole, pardon, or commutation arises in the future. Apparently no further action was taken under c. 123A until 1973. The defendant raises no issue as to these earlier proceedings. Cf. *Gomes* v. *Gaughan*, 471 F.2d 794, 797 (1st Cir. 1973); *Commonwealth* v. *Dagle*, 345 Mass. 539, 542, cert. denied, 375 U.S. 863 (1963).

Finally, on December 2-3, 1976, a hearing was held in the Superior Court on the Commonwealth's 1974 petition to commit the defendant. Subsequent to this hearing, the judge entered an order, accompanied by findings and rulings, that the defendant be committed as a sexually dangerous person to the treatment center for an indeterminate period of from one day to life. The defendant appealed, and we transferred the case from the Appeals Court on our own motion.

1. Before turning to the evidence in this case, we emphasize that "the Commonwealth must prove its case beyond a reasonable doubt in order to obtain an order granting a petition that a person be adjudicated [a sexually dangerous person] and committed as such or that he continue to be held in custody whenever his petition for release is heard." *Andrews, petitioner*, 368 Mass. 468, 489 (1975). Accord, *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271 (1978) (commitment for mental illness). The Commonwealth must carry this burden with respect to each of the elements contained in G. L. c. 123A, § 1, which comprises the definition of a sexually dangerous person. *Commonwealth* v. *McHoul*, 372 Mass. 11, 13 (1977).

Despite our prior decisions, the Commonwealth contends that the reasonable doubt standard of proof should not apply to cases where the defendant, as here, already faces a term of life imprisonment prior to the initiation of commitment proceedings.[2] The Commonwealth argues

---

[2] The Commonwealth relies on our statement in *Andrews, petitioner*, 368 Mass. 468, 481 (1975), that the equal protection clause of the Fourteenth Amendment to the United States Constitution requires that any significant procedural rights granted to persons involuntarily committed as mentally ill under G. L. c. 123 must be extended to persons involuntarily committed as sexually dangerous under G. L. c. 123A, § 6, "at least when such commitment extends beyond the limits of the maximum sentence which was imposed on the [sexually dangerous person] following his conviction." However, this statement bore no relation to our holding which extended on *due process* grounds

that once a defendant is sentenced to life imprisonment, an order of commitment for treatment as a sexually dangerous person should be considered no different from an administrative transfer to any of the correctional institutions in the Commonwealth. See *Meachum* v. *Fano,* 427 U.S. 215 (1976). We are not persuaded. Unlike a transfer between prisons, commitment as a sexually dangerous person follows an independent fact-finding proceeding. See *Specht* v. *Patterson,* 386 U.S. 605 (1967). The courts and the Legislature by providing a hearing and numerous procedural safeguards for the commitment of sexually dangerous persons (see *Andrews, petitioner, supra* at 482-483) recognize the "serious consequences" of an adjudication that a person is sexually dangerous. See *Commonwealth* v. *Travis,* 372 Mass. 238, 246 (1977). See also *Matthews* v. *Hardy,* 420 F.2d 607, 611 (D.C. Cir. 1969), cert. denied, 397 U.S. 1010 (1970). In this case, the defendant no longer would be considered for parole based on his record in prison and the crime for which he was convicted, but would have to seek parole under the terms of G. L. c. 123A, § 9, where he may or may not be as successful in obtaining release. To minimize the consequences of erroneous factual determinations at such hearings, this court required the reasonable doubt standard in *Andrews, petitioner, supra.* We decline to retreat from our holding in that case and to apply a double standard which more severely burdens prisoners already serving life terms. Even assuming that the Constitution does not require in this case the same stringent standard of proof as used in all other sexually dangerous person proceedings, the choice of the standard of proof has traditionally been an issue for the judiciary to resolve. *Woodby* v. *Immigration & Naturalization Serv.,* 385 U.S. 276, 284 (1966).

2. Applying the reasonable doubt standard, we conclude that, contrary to the defendant's claim, the evidence would warrant a finding that the defendant was

the reasonable doubt standard to commitment proceedings for sexually dangerous persons.

sexually dangerous within the meaning of G. L. c. 123A, § 1.

General Laws c. 123A, § 1, as appearing in St. 1958, c. 646, § 1, defines a sexually dangerous person as: "Any person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive behavior and either violence, or aggression by an adult against a victim under the age of sixteen years, and who as a result is likely to attack or otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires."

Since there was no evidence in this case of repetitive behavior or aggression by the defendant against a person under the age of sixteen, the defendant could not be adjudged a sexually dangerous person without proof of sexual misconduct of a compulsive and violent nature and a likelihood that injury will be inflicted. See *Peterson, petitioner*, 354 Mass. 110, 117 (1968); *Commonwealth* v. *Jarvis*, 2 Mass. App. Ct. 8, 10 (1974).

At the hearing on the Commonwealth's petition to commit the defendant, the Commonwealth offered the testimony of two psychiatrists and a therapist at the treatment center that the defendant was a sexually dangerous person, the report of an autopsy performed on the victim of the crime to which the defendant pleaded guilty of murder in the second degree in 1962, and two photographs of the murder victim. The defendant contends that this evidence was insufficient to support the judge's finding that the 1962 murder was compulsive. It is true that the judge came to the conclusion that the defendant was a sexually dangerous person based partly on the one conviction for murder. The defendant argues this to be error because the conviction of murder was the sole crime with sexual connotations of which the defendant had been convicted. Thus, the defendant claims there was no evidence of either repetitive or compulsive behavior; rather, only evidence of violence. The manner in which the crime was committed, however, may be sufficient to

warrant an inference of compulsion. "[A] single act of sexual misconduct may be so bizarre and irrational as to permit the inference by a trier of fact that it was uncontrollable, and thus provide the basis for a determination that it was compulsive behavior." *Commonwealth* v. *Jarvis, supra* at 12.

The evidence here, as explained by the Commonwealth's psychiatrists who had examined the defendant, could be viewed as sufficient to support the judge's finding of compulsive behavior. There is no dispute that the defendant, while drunk, murdered a woman in a laundromat. The decedent suffered multiple injuries. The sexual component of the crime was evidenced by the discovery in the victim's pelvic cavity of a soft drink bottle which had been forced through the vagina.

Although neither psychiatrist expressly characterized the defendant's offense as compulsive, this inference could be drawn from the nature of the crime and the psychiatric testimony that the defendant's alcoholism led him to lose control when intoxicated, to suffer "blackouts," and to perform such violent, impulsive acts. It is not necessary that the expert witnesses testify in the precise words of the statute. *Commonwealth* v. *Dagle*, 345 Mass. 539, 543, cert. denied, 375 U.S. 863 (1963). It is true that the defense psychiatrist did not believe that the offense was compulsive, but psychiatric unanimity is not required in these proceedings. See *Commonwealth* v. *Lamb*, 372 Mass. 17, 23-24 (1977).

The defendant also argues that the fourteen-year old murder furnished insufficient evidence that the defendant "is likely to attack or otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires." This is the most difficult statutory element to prove as it involves a prediction of future conduct based on a finding of past sexual misconduct. See *Sarzen* v. *Gaughan*, 489 F.2d 1076, 1084 (1st Cir. 1973). Evidence of past misconduct alone is thus inadequate to support a finding of sexual dangerousness, *Commonwealth* v. *Major*, 354 Mass.

*666, 668* (1968), cert. denied, 393 U.S. 1109 (1969). However, G. L. c. 123A, § 6, does not require that evidence of sexual misconduct must be adduced during the time the defendant is in prison. *Commonwealth* v. *Gomes*, 355 Mass. 479, 486 (1969). Accord, *Meola* v. *Fitzpatrick*, 322 F. Supp. 878, 887 (D. Mass. 1971).

Here the offense in 1962, which could be found to be of a compulsive, sexual nature, coupled with the testimony of the two psychiatrists for the Commonwealth, Drs. Moore and Saltzman, provided sufficient evidence on the issue whether the defendant is likely to commit future violent acts. Both psychiatrists had personally examined the defendant and studied his records at the treatment center. Dr. Saltzman testified that, notwithstanding the defendant's noninvolvement with alcohol since 1963 and his good institutional work record with an absence of disciplinary reports or sexual misbehavior, he was a sexually dangerous person. The doctor further testified that the defendant needed treatment (psychotherapy), that the defendant was an alcoholic, and that, in his opinion, if the defendant started drinking again the same type of conduct as was involved in the 1962 murder could reoccur. This opinion was corroborated by the testimony of Dr. Moore.[3] The judge could have properly relied on this evidence to find beyond a reasonable doubt that the defendant is sexually dangerous as defined in G. L. c. 123A, § 1.

---

[3] Dr. Saltzman testified that "the diagnosis of sexually dangerous was made on the basis of the fact that there was a history of drinking, with blackouts, with behavior that he [the defendant] didn't remember, with this one offense for which he pleaded guilty." Recognizing that these acts occurred prior to the defendant's imprisonment fourteen years ago, Dr. Saltzman nevertheless believed that if he were removed from the structured environment of an institution "there is a good possibility that there would be a recurrence of this type of behavior."

Dr. Moore concurred in this assessment. He stated that "[w]hen [the defendant] was on the outside he had a responsible job and he took care of the job and of his family, but when this man is drinking, and by his own admission, he does have periods of blackouts when he is not in control of himself and when he may perform impulsive acts."

While we might not reach the same conclusion as did the judge below, we will not "substitute our judgment for that of the trial judge to hold that the testimony of [the psychiatrist] was not reliable and that the evidence was too stale to support a determination that the defendant is presently [a sexually dangerous person]. These questions as to the weight and credibility of testimony were clearly for the trier of fact." *Commonwealth* v. *Lamb, supra* at 314.

3. Finally, the defendant argues that the judge improperly shifted the burden of persuasion to the defendant on the issue whether or not he was presently sexually dangerous. The defendant relies on the following language found in the findings and rulings which accompanied the order of commitment: "The burden is, of course, not upon the defendant to prove he is not a sexually dangerous person, however, where it is demonstrated that he is an alcoholic *and there is an absence of convincing proof that the compulsion to drink alcohol (until becoming drunk) inherent in that disease, has been restrained by self control or through other means, it must be presumed that the compulsion is present*" (emphasis supplied).

The defendant's alcoholism was a significant factor on which the judge relied in finding that the offense in 1962 was compulsive. It is probable that it was the psychiatrists' discussion of the defendant's alcoholism which led the judge to find beyond a reasonable doubt that the defendant was still sexually dangerous. However, by implying that the defendant had to present "convincing proof" that his alcoholism was under control, the judge may have improperly shifted the burden of proof to the defendant.

Furthermore, he may have placed on the defendant a burden of proof impossible to sustain. We note in particular the judge's finding in which he stated: "He [the defendant] has sought some aid while in prison for dealing with his alcoholism, but he has not been exposed to the presence of alcohol as he would be upon release. There is,

therefore, no evidence, nor can there be, that as an alcoholic he can live without alcohol in a world where it is freely available."

In this case, for the judge to find the defendant a sexually dangerous person, he must be convinced beyond a reasonable doubt that, on the basis of all the evidence, the defendant is likely to become intoxicated in the future and "as a result is likely to attack or otherwise inflict injury on the objects of his uncontrolled or uncontrollable desires." G. L. c. 123A, § 1. In reaching this difficult decision the judge must bear in mind that the reasonable doubt standard is founded on the value judgment "that it is far worse to convict an innocent man than to let a guilty man go free." *Andrews, petitioner, supra* at 488-489, quoting from *In re Winship*, 397 U.S. 358, 371-372 (1970) (Harlan, J., concurring).

Since we can only speculate whether the judge did indeed shift the burden of proof, we remand the case to the Superior Court so that the judge may reconsider or clarify his findings in a manner consistent with the rules of law discussed in this opinion. Should the judge conclude further evidence is required, he may order a new hearing.

*So ordered.*