## DAVID M. DUTIL, petitioner.

Norfolk. October 4, 2001. - May 17, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Sex Offender. Practice, Civil,* Sex offender. *Constitutional Law,* Sex offender, Double jeopardy, Ex post facto law, Equal protection of laws. *Due Process of Law,* Sex offender, Substantive rights. *Mental Health.*

The adjudication and commitment of a sexual offender to the Massachusetts Treatment Center pursuant to the pre-1990 version of G. L. c. 123A did not violate his right to substantive due process under either the United States Constitution or the Massachusetts Declaration of Rights where, although c. 123A does not explicitly mandate a determination of "mental illness," it does provide that the court find behavior indicating "a general lack of power to control . . . sexual impulses" that results in a likelihood of harm to a victim because of "uncontrolled or uncontrollable desires," and requires the Commonwealth to prove a present mental condition that results in uncontrolled sexual impulses. [13-19]

The commitment of a sexual offender to the Massachusetts Treatment Center pursuant to G. L. c. 123A did not violate double jeopardy principles and prohibitions on ex post facto laws, where c. 123A was neither criminal nor punitive in nature, but was intended by the Legislature as a civil statute. [19-20]

Where a sexual offender (petitioner) committed to the Massachusetts Treatment Center pursuant to G. L. c. 123A failed to identify specific conditions of his confinement that differed from those of civil detainees under G. L. c. 123 to support his contention that c. 123A violated his equal protection rights, this court was unable to determine whether any alleged differences were supported by a rational government interest; further, this court declined to consider an additional equal protection claim that was raised for the first time on the petitioner's application for direct appellate review and that was not fully briefed. [20-22]

A habeas corpus proceeding was not the proper forum for a sexual offender to challenge certain conditions of his confinement in the Massachusetts Treatment Center where, even if he could show that those conditions were unlawful, he would be entitled only to modification of the conditions rather than immediate release. [22]

A one-paragraph claim by a sexual offender that his commitment to the Massachusetts Treatment Center violated the Eighth Amendment to the United States Constitution did not rise to the level of acceptable appellate argument. [22]

PETITION for a writ of habeas corpus filed in the Superior Court Department on August 2, 1999.

The case was heard by *Judith Fabricant*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Michael A. Bergeron* for the petitioner.

*Mary P. Murray* for Department of Correction.

COWIN, J. We address the issue whether G. L. c. 123A, as amended through St. 1989, c. 555, which provides for the civil commitment of sexually dangerous persons, violates substantive due process.[1] On July 7, 1988, the petitioner, David M. Dutil, was adjudged a sexually dangerous person and confined to the Massachusetts Treatment Center (treatment center) pursuant to G. L. c. 123A. Dutil filed a pro se petition for habeas corpus, challenging the constitutionality of his commitment. A Superior Court judge denied the petition on November 16, 1999. Dutil filed a timely notice of appeal, and we granted his application for direct appellate review. We affirm.

Dutil challenges the constitutionality of his commitment on a number of grounds, primarily that the pre-1990 version of G. L. c. 123A violates the substantive due process requirements of both the United States Constitution and the Massachusetts Declaration of Rights because its definition of "sexually dangerous person" permits commitment of an individual on a finding of dangerousness alone, without requiring a finding that the individual's dangerousness be linked to any mental illness or abnormality.[2] Dutil recognizes that the United States Supreme Court, in *Kansas v. Hendricks*, 521 U.S. 346 (1997), set forth

---

[1]We consider the pre-1990 version of G. L. c. 123A because the petitioner in this case was committed in 1988 under the previous version of the statute. We were informed at oral argument that approximately 150 people are currently committed as sexually dangerous persons under that version of the statute. All references to G. L. c. 123A are to the pre-1990 version of the statute unless otherwise noted.

[2]Dutil argues that the Massachusetts Declaration of Rights provides greater substantive due process protection than the Federal Constitution, citing *Mendonza v. Commonwealth*, 423 Mass. 771 (1996). In that case, we noted that the Massachusetts Declaration of Rights requires that the commitment of sexually dangerous persons be based on proof beyond a reasonable doubt, although the Supreme Court has interpreted the Federal Constitution to allow confinement in analogous circumstances based on clear and convincing evidence. *Id.* at 782-783. However, generally, "our treatment of due process challenges to legislation has adhered to the same standards as those applied in Federal due process analysis." *Commonwealth v. Ellis*, 429 Mass. 362, 371

the substantive due process requirements for statutes that provide for the commitment of sexual offenders. We construe the pre-1990 version of G. L. c. 123A in conformity with substantive due process requirements, see *Kansas* v. *Hendricks, supra,* and conclude that Dutil's commitment does not violate his right to substantive due process or any of the other constitutional rights he claims.

1. *Statutory background.* General Laws c. 123A, § 1, as amended through St. 1985, c. 752, § 1, provided for the civil commitment of "[s]exually dangerous persons," defined as:

> "any person whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of sixteen years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

Under § 5 of the statute, a judge could commit an individual who had been convicted of a sexual offense to the treatment center after a hearing to determine whether the individual met the definition of a sexually dangerous person. The commitment is "for an indeterminate period of a minimum of one day and a maximum of such person's natural life," and is served concurrently with the sentence imposed for the original offense. *Id.* One committed under the statute may file a petition for examination and discharge annually. G. L. c. 123A, § 9. On the filing of a petition, the committed individual is entitled to a hearing to determine whether he or she remains sexually dangerous. *Id.* The same definition of "sexually dangerous person" applies to an original commitment under § 5, and a petition for discharge under § 9. The Commonwealth bears the burden of proving beyond a reasonable doubt that the individual sought to be committed is currently a sexually dangerous person. *Andrews, petitioner,* 368 Mass. 468, 489 (1975).

(1999). We have not differentiated the substantive due process standard of the Massachusetts Declaration of Rights from that of the Federal Constitution in cases involving substantive due process challenges to G. L. c. 123A. See *Commonwealth* v. *Bruno,* 432 Mass. 489, 503 (2000); *Hill, petitioner,* 422 Mass. 147, 155, cert. denied, 519 U.S. 867 (1996).

In 1990, the Legislature repealed portions of G. L. c. 123A. St. 1990, c. 150, § 304. As a result, new commitments were suspended until 1999, when the Legislature amended the statute and once again provided for the civil commitment of sexually dangerous persons. St. 1999, c. 74, §§ 3-8. Prior to the 1999 amendments, "no new 'sexually dangerous person' classifications and no new commitments were permitted." *Commonwealth* v. *Bruno*, 432 Mass. 489, 494 (2000). See St. 1990, c. 150, § 304 (repealing G. L. c. 123A, §§ 3-6, 7). The present version of G. L. c. 123A includes definitions of "sexually dangerous person" that require that the individual suffer from a "mental abnormality" or "personality disorder." It also includes a definition nearly identical to that contained in the pre-1990 version. G. L. c. 123A, § 1, as amended through St. 1999, c. 74, § 4.[3]

2. *Facts.* In 1986, Dutil was sentenced to two years' probation after admitting to sufficient facts on a charge of indecent assault and battery on a child under the age of fourteen years. In 1987, he was found in violation of probation and sentenced to a one-year term in a house of correction. Later that same year, he was indicted on four separate charges of indecent assault and battery on a child under fourteen years and pleaded guilty to those charges. On July 7, 1988, Dutil was sentenced to

[3]The current version of G. L. c. 123A, § 1, defines a "[s]exually dangerous person" as follows:

"[A]ny person who has been (i) convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility; (ii) charged with a sexual offense and was determined to be incompetent to stand trial and who suffers from a mental abnormality or personality disorder which makes such person likely to engage in sexual offenses if not confined to a secure facility; or (iii) previously adjudicated as such by a court of the commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of 16 years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

four concurrent ten-year prison terms at the Massachusetts Correctional Institution at Concord. In addition, the judge determined Dutil to be a sexually dangerous person and committed him to the treatment center for a term of from one day to life. Dutil completed his criminal sentence on January 29, 1997, but remains civilly committed under G. L. c. 123A.

Dutil filed petitions for discharge pursuant to G. L. c. 123A, § 9, in 1996 and 1997. A judge determined that Dutil remained a sexually dangerous person after a hearing on the 1996 petition, and Dutil withdrew the 1997 petition before the scheduled hearing. In 1998, he filed another petition for discharge,[4] followed by a petition for habeas corpus. It is that habeas corpus petition that is presently before us. Although it is unclear from his briefs and oral arguments, it appears that Dutil's challenge is based on his original commitment in 1988.[5]

3. *Substantive due process.* Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.' " *Aime* v. *Commonwealth*, 414 Mass. 667, 673 (1993), quoting *United States* v. *Salerno*, 481 U.S. 739, 746 (1987). The right involved in this case is freedom from physical restraint, a fundamental right. *Foucha* v. *Louisiana*, 504 U.S. 71, 80 (1992). Where a statute impairs a fundamental right, it violates substantive due process unless it is "narrowly tailored to further a legitimate and compelling governmental interest." *Aime* v. *Commonwealth, supra* at 673. Although freedom from physical restraint is a fundamental right, in certain narrow circumstances a State can provide for "the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public." *Kansas* v. *Hendricks*, 521 U.S. 346, 357 (1997).

In the *Hendricks* case, the United States Supreme Court set

[4]Dutil requested a jury trial in connection with his 1998 petition for discharge. There is no documentation in the record of this jury trial, but the parties have informed us that the trial took place in February, 2000, and that the jury found beyond a reasonable doubt that Dutil remained sexually dangerous. None of Dutil's claims is based on the 1998 petition and jury trial.

[5]Even if we were to treat his petition as challenging the denial of his 1996 petition for discharge, the standard would be the same, as the 1996 petition was governed by the statute in effect at the time of the 1988 commitment.

forth the requirements of substantive due process as applied to a statute providing for the civil commitment of sexual offenders. The Kansas statute at issue provided for the civil commitment of a person who "has been convicted of or charged with a sexually violent offense," and "suffers from a mental abnormality or personality disorder which makes the person likely to engage in the predatory acts of sexual violence." *Id.* The Court concluded that the statute was narrowly drawn because it restricts commitment to those individuals who have "a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated." *Id.* at 357-358. Although the Court concluded that a finding of dangerousness alone is insufficient grounds for a civil commitment, the statute also requires proof of "mental abnormality." This requirement saves the statute because it limits civil commitment to those "who suffer from a volitional impairment rendering them dangerous beyond their control." *Id.* at 358.

The Supreme Court recently reaffirmed and clarified its *Hendricks* decision in *Kansas* v. *Crane*, 534 U.S. 407 (2002). The Supreme Court of Kansas had interpreted *Hendricks* as requiring the State to "always . . . prove that a dangerous individual is completely unable to control his behavior." *Id.* at 411. While the Supreme Court rejected this formulation as too rigid, it did hold that a showing of serious difficulty in controlling behavior is required. *Id.* at 413. The Court, however, refrained from stating exactly what proof the State must present to demonstrate lack of control. *Id.* at 413-414. Whatever the proof may be, it must "distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Id.* at 413.

Dutil argues that G. L. c. 123A falls short of the *Hendricks* requirements because it does not explicitly require mental abnormality and, therefore, permits a finding based on dangerousness alone. However, the fact that G. L. c. 123A does not explicitly require "mental illness" or "mental abnormality" does not end our inquiry. Although the *Hendricks* case clearly requires a finding that the individual suffer from a present mental condition that creates a likelihood that the individual

will engage in sexually dangerous conduct in the future, *id.* at 358, it does not demand the use of a specific term to describe the mental condition. *Id.* at 358-359 ("the term 'mental illness' is devoid of any talismanic significance"). General Laws c. 123A meets the *Hendricks* requirements if it implicitly requires this finding, even if it does not use the specific terms "mental illness" or "mental abnormality." We conclude that G. L. c. 123A, as construed by this court, requires such a finding. *Pielech* v. *Massasoit Greyhound, Inc.*, 423 Mass. 534, 539 (1996), cert. denied, 520 U.S. 1131 (1997), quoting *Adamowicz* v. *Ipswich*, 395 Mass. 757, 763-764 (1985) ("[S]tatutes are to be construed so as to avoid an unconstitutional result or the likelihood thereof").

While G. L. c. 123A does not explicitly mandate a determination of "mental illness," it does provide that the court find behavior indicating "a general lack of power to control . . . sexual impulses" that results in a likelihood of harm to a victim because of "uncontrolled or uncontrollable desires." G. L. c. 123A, § 1. This language fulfils the *Hendricks* requirement that the individual suffer from a present mental condition. The language of G. L. c. 123A requires that the government demonstrate a continuing likelihood that the individual will reoffend. In order to make this showing, the Commonwealth must demonstrate that the individual suffers from a compulsive, obsessive, or other mental condition that renders him likely to continue to commit sexual offenses in the future. While this condition may often correlate with one or more clinically defined mental illnesses, the statute does not require express proof of a clinically defined mental illness, nor does the Constitution require that it do so. See *Kansas* v. *Hendricks, supra* at 359 ("Legal definitions . . . need not mirror those advanced by the medical profession").

The statute requires that the "general lack of power to control" be evidenced by "repetitive or compulsive sexual misconduct." Dutil argues that this language permits commitment on dangerousness alone because nothing more than past "repetitive" conduct need be used to infer lack of control. At the time of Dutil's commitment in 1988, however, we had not construed the language of the statute in this manner. Civil commitment was not permitted based solely on an individual's past

sexual conduct. *Commonwealth* v. *Walsh*, 376 Mass. 53, 58 (1978) ("Evidence of past misconduct alone is thus inadequate to support a finding of sexual dangerousness"). The inquiry focused on the individual's likelihood of causing harm in the future due to his mental condition. *Commonwealth* v. *Ackers*, 343 Mass. 63, 68-69 (1961) ("provisions [of G. L. c. 123A] carefully define the *mental condition* for which treatment is to be afforded" [emphasis added]). Although the judge who ordered Dutil's commitment did not specify the standard or evidence on which he relied in adjudging Dutil a sexually dangerous person, we assume that the judge correctly applied the controlling law to the facts before him. See *Commonwealth* v. *Ortiz*, 431 Mass. 134, 141 (2000), quoting *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 568 (1933) ("We assume that the trial judge 'correctly instructed himself' on the applicable burden of proof").

Our decisions since 1988 have similarly required that the Commonwealth demonstrate present dangerousness, see *Hill, petitioner*, 422 Mass. 147, 154, cert. denied, 519 U.S. 867 (1996) ("Commonwealth must prove beyond a reasonable doubt that the person is still sexually dangerous"), and the link of this dangerousness to a mental condition. See *id.* at 156-157 ("experts . . . drew conclusions about his *present state of mental health* from all the evidence available" [emphasis added]). Although it is clear that our prior decisions do not permit a finding based solely on past misconduct, see *Commonwealth* v. *Walsh, supra*, we today reiterate our view that the statute requires the Commonwealth to prove a present mental condition that results in uncontrolled sexual impulses.

The procedures governing commitment under G. L. c. 123A are further evidence that the Legislature intended a present mental condition to be a necessary component of any such determination. A person convicted of a sexual offense can only be committed as a sexually dangerous person after a commitment period of not longer than sixty days for "examination and diagnosis under the supervision of two qualified examiners."[6] G. L. c. 123A, § 4. After the examiners submit a report to the

---

[6]General Laws c. 123A, § 1, defines a "qualified examiner" as "a physician who is licensed pursuant to section two of chapter one hundred and

court, a judge conducts a hearing to determine whether the person is a "sexually dangerous person." G. L. c. 123A, § 5. At this hearing, "it shall be competent to introduce evidence of . . . psychiatric and psychological records," as well as the report of the qualified examiners. *Id.*

Dutil argues further that, although the language of G. L. c. 123A limits commitment to those individuals whose behavior demonstrates a "general lack of control," this language is insufficient to meet the *Hendricks* requirement of mental illness because it permits the commitment of individuals who are capable of controlling their sexual impulses, but choose not to do so. The language of G. L. c. 123A was apparently modeled on the Supreme Court of Minnesota's interpretation of its own sexually dangerous person statute. See *Peterson* v. *Gaughan,* 404 F.2d 1375, 1377 (1st Cir. 1968). The United States Supreme Court upheld the statute because Minnesota's highest court had previously interpreted its statute to require conduct that demonstrates "an utter lack of power to control . . . sexual impulses," and a showing that the individual is likely to cause injury to the object of his "uncontrolled and uncontrollable desire." *Minnesota ex rel. Pearson* v. *Probate Court,* 309 U.S. 270, 274 (1940).

Dutil argues that differences between our statute and its Minnesota counterpart render G. L. c. 123A unconstitutional. The Massachusetts version changes "utter lack of power to control" to "general lack of power to control," and uses the phrase "uncontrolled *or* uncontrollable desires" instead of "uncontrolled *and* uncontrollable desire." According to Dutil, these alterations demonstrate our Legislature's intent to include within the statute people who choose to engage in inappropriate sexual conduct despite their ability to control their desires. This is a specious argument. The requirement in G. L. c. 123A of a

twelve who is either certified in psychiatry by the American Board of Psychiatry and Neurology or eligible to be so certified, or a psychologist who is licensed pursuant to sections one hundred and eighteen to one hundred and twenty-nine, inclusive, of chapter one hundred and twelve; provided, however, that the examiner has had two years of experience with diagnosis or treatment of sexually aggressive offenders and is designated by the commissioner of correction. A 'qualified examiner' need not be an employee of the department of correction or of any facility or institution of the department."

"general lack of power to control" is analogous to the require-
ment set out in *Kansas* v. *Crane*, 534 U.S. 407 (2002), that the
State demonstrate "a serious difficulty" in controlling behavior.
*Id.* at 413.

The statute's use of the phrase "uncontrolled *or* uncontroll-
able desires" rather than "uncontrolled *and* uncontrollable
desire" does not change this result. A mental condition may cre-
ate serious difficulty in controlling behavior even though the
individual's desires are not completely "uncontrollable." The
Court rejected an interpretation of the *Hendricks* case that would
require that the individual suffer from a volitional impairment
that causes a complete lack of control. *Kansas* v. *Crane*, *supra*
at 411-412. The *Crane* Court noted that *Hendricks* focused on a
volitional impairment because the defendant in that case suf-
fered from such a condition. *Kansas* v. *Crane*, *supra* at 412-
413. The Court refused to restrict *Hendricks* to volitional impair-
ments, and suggested that an individual may be adjudged
sexually dangerous if the difficulty in controlling behavior is
caused by an emotional or cognitive condition. *Kansas* v. *Crane*,
*supra* at 414-415. An individual's sexual desires may remain
"uncontrolled" as the result of a mental condition even though
that individual retains some measure of control over his actions.
As long as the statute requires a showing that the prohibited
behavior is the result of a mental condition that causes a serious
difficulty in controlling behavior, the statute meets due process
requirements. The language of G. L. c. 123A, as we have
interpreted it, clearly requires such a showing.

Dutil also contends that the statute is invalid because "sexual
dangerousness" is not a mental illness. Dutil cites studies by
some members of the medical community that conclude that
sexual offenders are not mentally ill. *Kansas* v. *Hendricks*, *su-
pra* at 360 n.3, recognized that "psychiatric professionals are
not in complete harmony in casting pedophilia . . . as 'mental
illness[].' " However, the Court held that a Legislature is free to
define medical and scientific terms as it sees fit, especially in
areas of disagreement among professionals in the medical and
scientific communities. *Id.*

Dutil also maintains that the Commonwealth cannot now
claim that sexual dangerousness is a mental illness because it

has previously opined that sexual offenders do not suffer from mental illness and are no different from ordinary criminals. Dutil states that this governmental position is demonstrated by the 1990 repeal of provisions of G. L. c. 123A, and the suspension of new commitments to the treatment center. See St. 1990, c. 150, § 304. In fact, in 1988, the Legislature established a special advisory panel on forensic and mental health to study the matter. See St. 1988, c. 1, § 4. The panel issued a report recommending the termination of new commitments because it found that sexual violence is not the product of mental illness. See Report of the Governor's Special Advisory Panel on Forensic Mental Health (1989). However, even if the Commonwealth abolished new commitments because it adopted the view that sexual offenders do not suffer from mental illness, no constitutional principle prevents the Legislature from changing its position over time. The Commonwealth demonstrated its intention once again to treat sexual dangerousness as a mental illness by reinstating new commitments to the treatment center in 1999. See St. 1999, c. 74, § 6.[7]

4. *Ex post facto and double jeopardy arguments.* Dutil claims that his commitment violates double jeopardy principles and prohibitions on ex post facto laws.[8] These prohibitions apply only when the statute at issue is criminal or punitive in nature, see *Kansas* v. *Hendricks, supra* at 361, a matter of legislative

[7]Dutil also argues that the statute, as applied to him, violates due process because he does not suffer from mental illness. In support of this argument, Dutil cites the ruling of the Superior Court on his 1996 petition for discharge, claiming that the judge "makes no such mention of any mental abnormality." Dutil, however, has not provided us with the full record of the hearing on his 1996 petition, and his claims in this regard do not rise to the level of appropriate appellate argument. See *Adoption of Kimberly*, 414 Mass. 526, 536-537 (1993).

[8]Dutil does not state whether his challenges to G. L. c. 123A are based on the double jeopardy and ex post facto provisions of the Federal Constitution, or based on the analogous State law principles. We have not differentiated the ex post facto provision of the Massachusetts Declaration of Rights from that of the Federal Constitution. See *Commonwealth* v. *Bruno*, 432 Mass. 489, 499 n.9 (2000). The Massachusetts Declaration of Rights has no explicit double jeopardy provision, but Massachusetts common and statutory law recognizes a protection against double jeopardy. Dutil makes no argument that, in these circumstances, Massachusetts common law provides more protection than the Federal Constitution. See *Luk* v. *Commonwealth*, 421 Mass. 415, 416 n.3 (1995).

intent, to be determined by statutory construction. *Seling* v. *Young*, 531 U.S. 250 (2001). We have repeatedly held that the Legislature intended G. L. c. 123A as a civil statute, see, e.g., *Commonwealth* v. *Tate*, 424 Mass. 236, 239, cert. denied, 522 U.S. 832 (1997); *Hill, petitioner*, 422 Mass. 147, 153-154 (1996); *Andrews, petitioner*, 368 Mass. 468, 487 (1975); *Commonwealth* v. *Ackers*, 343 Mass. 63, 68 (1961), and recently reaffirmed this classification in *Commonwealth* v. *Bruno, supra* at 500 ("The Legislature intended the current version of c. 123A, as with former versions, to be remedial"). A statute intended by the Legislature as remedial may be determined to be punitive "only where a party challenging the statute provides 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " *Id.*, quoting *Kansas* v. *Hendricks, supra*. In the *Bruno* case, we examined the purpose and effect of G. L. c. 123A and held that the statute was not shown to be so punitive in its effect as to negate the Legislature's intent. *Commonwealth* v. *Bruno, supra* at 501-502.

Dutil further argues the act is punitive as applied to him because the conditions of his confinement at the treatment center resemble those of prisoners more than those of patients. In *Seling* v. *Young, supra*, the Court rejected the argument that a statute can be declared punitive "as applied" to a particular person when the highest State court has already definitively construed the statute as civil. *Id.* at 263. The Supreme Court concluded that an "as-applied" challenge would "prove unworkable" because it would "never conclusively resolve whether a particular scheme is punitive and would thereby prevent a final determination of the scheme's validity." *Id.* Like the Washington statute at issue in the *Seling* case, we have already declared the Massachusetts statute civil. See, e.g., *Commonwealth* v. *Bruno, supra* at 500-501. Thus, the specific conditions of Dutil's confinement do not convert the statute from civil to punitive.

5. *Equal protection claims.* Dutil argues that G. L. c. 123A violates his equal protection rights because he is not treated in a manner similar to civil detainees under G. L. c. 123, which provides for the commitment and treatment of the mentally ill

and mentally retarded. Dutil contends that sexually dangerous persons are scorned and disenfranchised by society, and are therefore entitled to a heightened standard of review. Societal views of sexual offenders do not elevate them to a suspect class. We have always applied a rational basis standard of review for equal protection claims brought by sexually dangerous persons. See *Commonwealth* v. *Tate, supra* at 239.

In *Andrews, petitioner, supra,* we held that "any significant procedural rights granted to persons involuntarily committed under c. 123 must be extended to persons involuntarily committed under c. 123A." *Id.* at 481. Detainees under G. L. 123 are entitled to an automatic annual review, while those under G. L. c. 123A must file a petition to exercise their right to an annual review. However, we have already determined that this difference in procedure does not violate equal protection. See *Thompson, petitioner,* 394 Mass. 502, 507-508 (1985). Although Dutil alleges that his commitment has "become that of an inmate, and is no longer like . . . that of a civil [detainee]," Dutil does not identify other specific conditions of his confinement that differ from those of civil detainees under G. L. c. 123. We are therefore unable to determine whether any alleged differences are supported by a rational government interest.

In his application for direct appellate review, Dutil raises an additional equal protection claim not raised in his original habeas corpus petition or appellate brief. He posits that the amended version of G. L. c. 123A violates his equal protection rights by adopting additional definitions of "sexually dangerous person," while retaining the definition under which he was committed. Because the claim was not raised below, we decline to consider it. See *Gagnon, petitioner,* 416 Mass. 775, 780 (1994) ("Generally . . . we shall not address issues raised for the first time on appeal, if the record accompanying them is lacking . . . in providing a basis for their intelligent resolution"). Dutil's brief does not make this argument, and his application for direct appellate review sets out the issue in one short paragraph and does not support the argument with any reasoned analysis why the classification is not supported by a rational government interest. Although this court on occasion exercises its discretion to consider issues not raised below, see

*id.*, the exercise of discretion is not appropriate in a case where a party has not fully briefed the issue. Cf. *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 87-88 (1977).

6. *Challenges to the conditions of confinement.* Dutil sets forth additional challenges to the conditions of his confinement, including that he is wrongfully being denied participation in a community access program, and that he is mixed with prison inmates in violation of the statute. A habeas corpus proceeding is not the proper forum for these claims, because "a petitioner for habeas corpus must show that he or she is entitled to be released from restraint by the particular respondent or respondents named in the petition." *Kauffman, petitioner,* 413 Mass. 1010, 1011 (1992), quoting *Hennessy* v. *Superintendent, Mass. Correctional Inst., Framingham,* 386 Mass. 848, 852 (1982). Even if Dutil could show that the conditions of his confinement are unlawful, he would be entitled only to modification of the conditions rather than immediate release.

7. *Eighth Amendment claims.* Dutil argues that his commitment violates the Eighth Amendment to the United States Constitution because the continuation of his confinement is excessive and his punishment is disproportionate to the gravity of his offense. Dutil's treatment of this issue in one short paragraph is insufficient to present the issue for appellate review. See *Adoption of Kimberly,* 414 Mass. 526, 536-537 (1993) (three-sentence argument without meaningful citation to authority does not rise to level of acceptable appellate argument); Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

*Judgment affirmed.*