Giles, Linda E., J.
Introduction
This is a petition of petitioner Commonwealth of Massachusetts (“Commonwealth”) to commit respondent O.C. Houston (“respondent”) as a sexually dangerous person pursuant to G.L.c. 123A, §12. The matter came on for juiy-waived trial on October 30, 2006; October 31, 2006; and November 1, 2006. The Commonwealth called Dr. Ira Silverman (“Dr. Silver-man”) and two qualified examiners (“QE’s”), Dr. Ste *66 phen DeLisi (“Dr. DeLisi”) and Dr. Michael Murphy (“Dr. Murphy”). The respondent called Dr. Eric Brown (“Dr. Brown”), Dr. Joseph Plaud (“Dr. Plaud”), Jannel Pearson and Fanny Pearson (the respondent’s sister and mother, respectively), and the respondent. The court also considered thirty-five exhibits, including the two QEs’ reports.
Findings of Fact
The respondent is thirty-eight years old (D.O.B.: 12/28/67). He is single and has one child (a daughter). He receives bi-monthly visits from his mother, sister, brother, and daughter. He is an intelligent man, who desires to complete his education at Wentworth Institute and become an electrician, plumber, or computer technician. His past employment has included positions at Raytheon as a computer aid designer and at Apollo Security as a security officer. There is no history of drug or alcohol abuse or significant psychiatric difficulties, except for a suicide gesture approximately twenty years ago and ongoing issues with depression.
The respondent first experienced sexual intercourse at age sixteen with a prostitute and continued to frequent prostitutes for a year or two before becoming involved in a steady relationship with his first girlfriend. That relationship ended when he struck her several times out of jealousy. Around this time, he had been “driving around grabbing women” on the buttocks or breasts, behavior he considered to be in the nature of a “high school prank.” There also was some “slapping” violence in his next relationship with a woman, with whom he had his daughter. After another six-month relationship with still another woman, he engaged in a series of superficial, non-violent relationships with adult females. The respondent denies any history of homosexual behavior. He masturbates on a daily basis “to get to sleep.”
In 1982, when the respondent was fourteen years old, he engaged in fairly typical adolescent male behavior by grabbing a fourteen-year-old girl and touching her breasts, causing her to slap him. The police became involved, and the respondent was ordered to participate in therapy.
In 1987, the respondent was convicted for four separate incidents of indecent assault and battery, which included attempting to pull down a woman’s shorts in a mall parking lot and slapping the buttocks of a girl riding a bicycle. On one count of indecent assault and battery, he received a thiriy-month sentence, with sixty days to serve and the balance suspended with probation, which he later violated. In 1987, he also was convicted of two non-sexual crimes, unarmed robbery and assault and battery.
In 1995, the respondent committed the governing offense of aggravated rape, for which he was convicted in 1997 and sentenced to seven to ten years in state prison. (Two accompanying charges, kidnapping and assault and battery, were dismissed and filed, respectively.) In the predicate offense, the victim, a prostitute, reported that the respondent pulled her into a car with the threat of a gun and a knife; repeatedly raped her orally, vaginally, and anally over a four- or five-hour period; and punched her in the breasts. Although he denied at his trial much of the victim’s account and has refuted certain aspects of the assault in the past, including the use of a weapon and speaking to his daughter’s photograph on the dashboard during the incident, the respondent now admits the general accuracy of the victim’s version of the event.
After entering the state prison system on January 31, 1997, the respondent transferred to the Massachusetts Treatment Center on April 9, 2001, to participate further in the sex offender treatment program. He has participated extensively in sex offender treatment and psycho-educational classes, has progressed through most phases of the Sex Offender Treatment Program (“SOTP”), and has demonstrated a sincere motivation to address his sexual offending. He was terminated from the fourth phase of treatment because of discrepancies between his version and the official version of the governing offense. (His temporary detention status pursuant to the instant petition has prevented him from participating in Phase IV, or T-Core, of the SOTP and completing a Comprehensive Relapse Prevention Plan.) Although he failed the “Victim Empathy” course twice in the past, he has accepted responsibility for the brutality of the governing offense and manifested genuine empathy for the effects of his offenses on his victims.
While at the Treatment Center, the respondent has been cited for a few minor infractions, such as being out of place for count. He has been reported for questionable but insignificant “boundary violations”: he made an inappropriate but non-sexual comment to a staff person about her blushing and told another staffer that he was attracted to her; and he draped his arm over his daughter’s shoulder and licked her diriy fingers to clean them during a visit.
If released, the respondent would not be on probation or parole but would be required to register with the Sex Offender Registry Board. However, in order to obtain the structure that probation affords, he is willing to request that the court, Brady, J., reopen his filed assault and battery charge and place him on probation with a GPS monitoring device.
Rulings of Law
The Commonwealth bears the burden of proving beyond a reasonable doubt that the person to be committed is a sexually dangerous person. Andrews, petitioner, 368 Mass. 468, 489 (1975); G.L.c. 123A, § 14(d). It is not up to the respondent to prove that he will not reoffend unless he is confined to a secure facility. See Page v. Commonwealth, 13 Mass.App.Ct. 384, 388 (1982). “The determination of sexual dangerous is a legal and not a psychiatric question.” Commonwealth v. McHoul, 372 Mass. 11, 15 (1977). See *67 Commonwealth v. Denham, 8 Mass.App.Ct. 724, 73 (1979).
“The focus of the definition of ‘sexually dangerous person’... is a defendant’s current mental condition.” Commonwealth v. Bruno, 432 Mass. 489, 498 (2000). A “sexually dangerous person” is defined under the statute as “any person who has been . . . convicted of ... a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility ...” G.L.c. 123A, §1. A “mental abnormality” is “congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons.” Id. A “personality disorder" is “a congenital or acquired physical or mental condition that results in a general lack of power to control sexual impulses.” Id. “[S]omething is ‘likely’ if it is reasonably to be expected in the context of the particular facts and circumstances at hand.” Commonwealth v. Boucher, 438 Mass. 274, 276 (2003).
In determining whether a person is likely to reoffend, the factfinder must analyze a number of factors, “including the seriousness of the threatened harm, the relative certainty of the anticipated harm, and the possibility of successful intervention to prevent that harm. ” Id. Evidence of past misconduct alone is an insufficient basis to support a finding of sexual dangerousness. Commonwealth v. Walsh, 376 Mass. 53, 58 (1978); Commonwealth v. Major, 368 Mass. 666, 668 (1968). By the same token, the statute does not require that the Commonwealth adduce recent evidence of sexual misconduct during the time the respondent is incarcerated. Id. at 59. See Hill petitioner, 422 Mass. 147, 157 (1996).
All three Commonwealth experts testified that the respondent displayed certain elements of an antisocial personality disorder or an unspecified mental abnormality through his sexual acting out as a teenager, the public episodes of indecent assault and battery, and especially the brutal governing offense. Nevertheless, none of them could ascribe an actual Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (Text Revision) (“DSM-IV-TR”), diagnosis to the respondent for lack of a pervasive pattern of antisocial or personality disorder.
While a DSM-IV-TR diagnosis is not required under the statute, the court is troubled by the syllogistic logic employed by the Commonwealth’s experts to conclude that the respondent currently suffers from a mental abnormality or personality disorder that makes him likely to reoffend if not confined to a secure facility. See Bruno, 432 Mass. at 498. The position of the Commonwealth’s experts can be summed up in the words of Dr. DeLisi: “Having been convicted of a predicate offense, Mr. Houston appears to suffer from a mental abnormality and is likely to offend in a sexual manner if not confined to a secure facility.” Their argument seems to follow these lines: all violent rapes are axiomatically antisocial in nature; the display of antisocial characteristics connotes an increased likelihood of re-offending; therefore, all violent rapists, like the respondent, are likely to re-offend. The weakness in their reasoning is that it could be applied indiscriminately to any violent rapist, thereby casting too wide a net. Indeed, Dr. Silverman conceded that many incarcerated men would exhibit aspects of antisocial personality disorder just by virtue of their criminal history. Thus, the cornerstone of these experts’ finding of sexual dangerousness is the respondent’s past sexual misconduct alone, see Walsh, 376 Mass. at 58; Major, 354 Mass. at 668, when, in fact, the respondent, who, according to Dr. Plaud, does not stand out uniquely as a violent offender, is at no greater risk of reoffending than any man convicted of a violent rape. Such proof hardly instills in this court “an abiding conviction, to a moral certainty," Commonwealth v. Webster, 5 Cush. 295, 320 (1850), that the respondent is a sexually dangerous person.
By contrast, the respondent’s experts, Drs. Brown and Plaud, both experienced licensed psychologists in this field, did not find the respondent to be suffering from any form of mental abnormality or personality disorder. In addition, all the trial witnesses testified that, in any event, antisocial personality disorder abates in the fourth decade of life. (The respondent is now in the fifth decade of his.) Although the respondent scored in the highest risk category on the Static 99 test, even the Commonwealth’s own experts do not seem to put much weight on an actuarial tool based only on static factors.
The respondent presents a number of positive, risk-reducing factors. Even Dr. Murphy, one of the QE’s, agrees that the respondent has participated extensively in sex offender treatment, has demonstrated a genuine motivation to address his past misconduct, and has expressed sincere empathy for his victims. The respondent has gained much insight and maturity over the years, which have allowed him to address his past cognitive distortions and minimization of his offenses. In Dr. Silverman’s opinion, he has addressed the issues arising from his termination from treatment. He clearly has family support and has maintained a relationship with his daughter. Accordingly, the respondent is unlikely to re-offend if not confined to a secure facility. See Bruno, 432 Mass. at 498.
ORDER FOR JUDGMENT
For all the foregoing reasons, it is hereby ORDERED AND ADJUDGED that the Commonwealth’s petition for commitment be DENIED and that the respondent be DISCHARGED. However, it is further ORDERED that this Order for Judgment be STAYED for thirty (30) days from today (or such further time as the parties *68 may agree) to allow the respondent to pursue his motion for institution of probation supervision with the court, Brady, J.