NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-841

RICHARD ZIEHL, petitioner.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the Superior Court on his petition for release pursuant to G. L. c. 123A, § 9, a jury found that the petitioner, Richard Ziehl, was still a sexually dangerous person (SDP) and should remain civilly committed at the Massachusetts Treatment Center (treatment center).  On appeal, the petitioner argues that the evidence at trial was insufficient to support a finding that he is likely to reoffend unless he remains committed.  We affirm.

Background.  On September 23, 2015, the petitioner was adjudicated an SDP and committed to the treatment center for a duration of one day to life.  G. L. c. 123A, § 14 (d).  On October 1, 2015, he filed his first "Petition for Examination and Discharge" (§ 9 petition) arguing that he no longer qualified as an SDP.  A Superior Court jury in 2019 found that

he remained an SDP, which judgment a panel of this Court affirmed.[1]  The petitioner submitted his second § 9 petition, the subject of this appeal, in March of 2019.  In 2022, a Superior Court jury concluded that he remained an SDP and should not be released from the treatment center.  The petitioner appealed the judgment to this court.

Discussion, sufficiency of the evidence.  For a jury to find that a petitioner remains an SDP pursuant to G. L. c. 123A, § 9, the jury must conclude that the petitioner satisfies the same criteria required for an original SDP adjudication.  Dutil, petitioner, 437 Mass. 9, 11 (2002).  A petitioner "may be committed as a sexually dangerous person if he has been convicted of a sexual offense, suffers from a mental abnormality or personality disorder that renders him a menace to the health and safety of others, and is likely to engage in sexual offenses if not confined."  Commonwealth v. Fay, 467 Mass. 574, 580, cert. denied, 574 U.S. 858 (2014).  This requires that the jury find beyond a reasonable doubt that the petitioner "is likely to attack or otherwise inflict injury on . . . victims because of his uncontrolled or uncontrollable desires."  G. L. c. 123A, § 1 "Sexually dangerous person."  In this circumstance, "likely" means "reasonably to be expected in the context of the

[1] Ziehl, petitioner, 99 Mass. App. Ct. 1131 (2021).

2

particular facts and circumstances at hand." Commonwealth v. Boucher, 438 Mass. 274, 276 (2002). The jury "c[an] and should consider the evidence of the petitioner's past sexual misconduct and . . . draw inferences based on that misconduct" to arrive at this finding. Wyatt, petitioner, 428 Mass. 347, 354 (1998). The jury may not, however, rely on "past misconduct alone . . . to support a finding of sexual dangerousness." Commonwealth v. Walsh, 376 Mass. 53, 58 (1978).

The petitioner's criminal record includes convictions for violent and sexual offenses, including armed assault, assault and battery, home invasion, and failure to register as a sex offender. Several of the offenses occurred when the petitioner was an adolescent; the most recent offenses occurred in 2003. Since that time, the petitioner had until 2015 been confined in state prison, after which he civilly was committed at the treatment center, where he remains.

In addition to his past misconduct, the petitioner has been diagnosed with antisocial personality disorder (ASPD), a conclusion unanimously agreed to by the members of the Community Access Board (CAB) in their October 2021 report. The Supreme Judicial Court has emphasized that "[Massachusetts] law does not permit the indefinite and indiscriminate commitment of persons solely because of an ASPD diagnosis." Commonwealth v. George, 477 Mass. 331, 336 (2017). The Commonwealth must also prove

3

that the ASPD "result[s] in an inability to control sexual impulses."  Id. at 338.

Here, while the CAB concluded that the petitioner's ASPD does not constitute a "defined mental abnormality" rendering him congenitally predisposed to the commission of criminal sexual acts, the board members did unanimously agree that the petitioner's "sexual offenses were repetitive and compulsive." This was a sufficient basis for the jury to conclude that the petitioner's ASPD made him unable to control his sexual impulses.

The jury's finding that the petitioner still meets the SDP criteria was also supported by the opinions of the two qualified examiners who reviewed the petitioner's case and testified at trial.  In their written reports, and during their testimony at trial, both qualified examiners opined that the petitioner is likely to reoffend if released and that he continued to satisfy the statutory definition of an SDP.

The petitioner, while committed at the treatment center, incurred fourteen "Observation of Behavior Reports" (OBRs) between 2015 and 2020.  None of the reported incidents involved sexual offenses.  Both qualified examiners did, however, emphasize an incident in September 2019 when the petitioner received an OBR for "repeatedly calling Committee for Public Counsel Services (CPCS) and reportedly whispering comments such

4

as 'pussy cat' into the phone."  While the nonsexual nature of his OBRs is less suggestive of his continued inability to control his sexual urges than sexual offense OBRs would be, the jury was permitted to consider his continued rule violations when determining whether he satisfied the SDP criteria.

Further contributing to the petitioner's risk of reoffending is his unwillingness to fully engage in rehabilitative sex offender treatment.  The petitioner's 2021 annual treatment review noted that he has declined to fully participate in the sex offender treatment program because the petitioner believed that his most recent conviction was not for a sexual offense.  As a panel of this court explained in the petitioner's previous § 9 appeal, the 2003 incident had been characterized as a sexual offense because his conduct there "largely mirrored the conduct in other sexual offenses."  Ziehl, petitioner, 99 Mass. App. Ct. 1131, slip op. at 4 n.3 (2021). And during the introductory portion of the program, which he did complete, several treatment assignments were "completed . . . in a superficial manner."  This refusal to fully engage with the treatment program is especially relevant in light of the petitioner's 2020 CAB report, which emphasized full engagement with the program as an important goal for the following year. The petitioner's failure to engage in the treatment program following these recommendations, along with his diagnosed ASPD

and record of violent and sexual offenses provided a sufficient basis from which a reasonable jury could find that the petitioner has not progressed in treatment to the extent that he no longer satisfies the SDP criteria.

<u>Judgment affirmed</u>.

By the Court (Sacks, Brennan & D'Angelo, JJ.[2]),

*Joseph F. Stanton*

Clerk

Entered:  November 30, 2023.

---

[2] The panelists are listed in order of seniority.